Jonathan D. Selbin (State Bar No. 170222)
jselbin@lchb.com
Annika K. Martin
akmartin@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000

Joseph G. Sauder
jgs@sstriallawyers.com
SAUDER SCHELKOPF LLC
555 Lancaster Avenue
Berwyn, Pennsylvania 19312
Telephone: 888.711.9975

[additional attorneys listed on signature page]

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

JANE DOE K.G., JANE DOE T.F., and JANE DOE B.S., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

PASADENA HOSPITAL ASSOCIATION, LTD., d/b/a HUNTINGTON MEMORIAL HOSPITAL, and PATRICK SUTTON, M.D.;

Defendants.

Case No. 2:18-cv-8710

**CLASS ACTION COMPLAINT**

DEMAND FOR JURY TRIAL

# TABLE OF CONTENTS

**Page**

NATURE OF THE ACTION .... 1
JURISDICTION AND VENUE .... 3
PARTIES .... 3
FACTUAL ALLEGATIONS .... 4
A. The standard of care for the obstetrical treatment of pregnant women. .... 4
B. Women entrusted their medical care to Huntington Hospital. .... 6
C. Sutton and Huntington Hospital's abuse of trust and violation of the standard of care. .... 6
D. Plaintiffs' Experiences .... 8
E. The statute of limitations is tolled based on the continuing violations doctrine and fraudulent concealment. .... 11
CLASS ACTION ALLEGATIONS .... 14
FIRST CLAIM FOR RELIEF GENDER VIOLENCE, Cal. Civ. Code § 52.4 (Against Defendants Sutton and Huntington Hospital) .... 17
SECOND CLAIM FOR RELIEF SEXUAL HARASSMENT, Cal. Civ. Code § 51.9) (Against Defendants Sutton and Huntington) .... 18
THIRD CLAIM FOR RELIEF SEXUAL ASSAULT (Against Defendant Sutton) .... 20
FOURTH CLAIM FOR RELIEF SEXUAL BATTERY, Cal. Civ. Code § 1708.5 (Against Defendant Sutton) .... 22
FIFTH CLAIM FOR RELIEF NEGLIGENCE (Against Defendant Huntington Hospital) .... 24
SIXTH CLAIM FOR RELIEF GROSS NEGLIGENCE AND/OR WANTON AND RECKLESS MISCONDUCT (Against Defendants Sutton and Huntington Hospital) .... 26
SEVENTH CLAIM FOR RELIEF NEGLIGENT SUPERVISION (Against Defendant Huntington Hospital) .... 27
EIGHTH CLAIM FOR RELIEF NEGLIGENT HIRING/RETENTION (Against Defendant Huntington Hospital) .... 30
NINTH CLAIM FOR RELIEF NEGLIGENT FAILURE TO WARN, TRAIN, or EDUCATE (Against Defendant Huntington Hospital) .... 33
PRAYER FOR RELIEF .... 34
DEMAND FOR JURY TRIAL .... 34

Plaintiffs Jane Doe K.G., Jane Doe T.F., and Jane Doe B.S. ("Plaintiffs"), on behalf of themselves and all others similarly situated, file this class action against Huntington Memorial Hospital ("Huntington Hospital" or "Huntington") and Patrick Sutton, M.D. ("Sutton"), and allege as follows:

## NATURE OF THE ACTION

1. This is a class action on behalf of individuals who were sexually abused, harassed, and molested by Defendant Dr. Patrick Sutton, while they were patients in his care at Huntington Hospital.

2. Trust is an essential part of the relationship between physician and patient. "Without trust, how could a physician expect patients to reveal the full extent of their medically relevant history, expose themselves to the physical exam, or act on recommendations for tests or treatments?"[1]

3. "Presumed consent is a critical manifestation of trust that makes possible much of routine doctor visits."[2] Absent a presumption of trust, patients might avoid essential medical care.

4. "Important as it is to measure trust in individual clinicians and the actions and circumstances that affect it, it is equally important, in today's health system, to study (empirically and normatively) trust and trustworthiness in organizations and institutions."[3]

5. Patrick Sutton, M.D. violated this trust by taking advantage of female patients who sought women's-health-related medical care from a gynecologist/obstetrician at Huntington Hospital. These women were highly vulnerable: naked or partially unclothed in a closed examination room with the

---

[1] Susan Dorr Goold, MD, MHSA, MA, *Trust, Distrust and Trustworthiness: Lessons from the Field*, 17 J. GEN. INTERNAL MED. 79, 79–81 (2002) (citations omitted).

[2] *Id.*, citing Ruth Faden & Tom Beauchamp, A HISTORY AND THEORY OF INFORMED CONSENT 274–80 (Oxford Univ. Press 1986).

[3] *Id.*

expectation that physical contact would occur for medical treatment only in accordance with the standard of care.

6. Sutton used his position of trust and authority at Huntington to sexually abuse Plaintiffs on multiple occasions, by engaging in acts that include but are not limited to: inappropriate and not-medically-necessary sexualized touching during gynecological examinations and treatment, lewd and threatening sexualized questions and comments to patients during examinations and outside the medical setting, in public places.

7. As is typical with sexual predators, Sutton had a pattern of behavior and a common course of conduct that he exhibited towards all his victims, including Plaintiffs and Class members.

8. Over the years that Sutton has been employed by Huntington, numerous Class members have made eerily similar complaints about his inappropriate, abusive, and harassing behavior, including, but not limited to: Sutton making suggestive comments about patients' bodies during gynecological examinations; touching patients' bodies in a manner that had no medical purpose; improper touching; crude sexual comments; and intrusive questions about their bodies and sexual habits.

9. Huntington had a duty to ensure that Sutton used his trusted position consistent with the standard of care and to ensure that Sutton did not violate that trust by abusing and harassing patients.

10. As a medical doctor, and as an employee of Huntington, Sutton owed Plaintiffs and Class members a duty of due care in carrying out medical treatment.

11. Despite the fact that Huntington has publicly admitted that it received numerous complaints of Sutton's sexually abusive behavior, dating back to at least 1998, Huntington actively and deliberately concealed Sutton's sexual abuse for years, continuing to grant Sutton unfettered access to the female Huntington patients in his care, all to protect Huntington's reputation and financial coffers.

12. Plaintiffs seek appropriate relief on behalf of the other individuals who experienced similar mistreatment by Sutton and Huntington.

## JURISDICTION AND VENUE

13. The Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because: (a) Plaintiffs seeks to represent a nationwide class of the hundreds, or thousands, of individuals sexually abused, harassed, and molested by Defendant Dr. Patrick Sutton, (b) the amount in controversy exceeds $5,000,000, excluding interest and costs, (c) the proposed class consists of more than 100 individuals, and (d) none of the exceptions under the subsection applies to this action.

14. This Court has personal jurisdiction over Defendants. They conduct substantial business in this District and intentionally availed themselves of the laws and markets of this District. A significant portion of the acts and omissions complained of occurred in the District, and Plaintiffs and many class members suffered harm in the District.

15. Venue is proper in this District under 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

*Plaintiffs*

16. Given the sensitive nature of their claims, Plaintiffs are using pseudonyms in this litigation to protect their privacy. If required by the Court, Plaintiffs will seek permission to proceed under these pseudonyms.

17. Plaintiff Jane Doe K.G. is a resident of Flagstaff, Arizona, and a citizen of the United States.

18. Plaintiff Jane Doe T.F. is a resident of Palmdale, California, and a citizen of the United States.

19. Plaintiff Jane Doe B.S. is a resident of Claremont, California, and a citizen of the United States.

*Defendants*

20. Defendant Patrick Sutton, M.D. was and is a resident of Altadena, California, and a citizen of the United States.

21. In or about 1989, Sutton started working at Huntington Hospital as an obstetrician/gynecologist. At all relevant times, Sutton was an actual and/or apparent, duly authorized agent, servant, and/or employee of Defendant Huntington Hospital and carried on an obstetrics/gynecological medical practice in Pasadena, California, as part of his employment.

22. Defendant Pasadena Hospital Association, Ltd. d/b/a Huntington Memorial Hospital is a California nonprofit corporation having its principal place of business in California; and doing business in Los Angeles County, California.

23. Upon information and belief, each of the Defendants named in this Complaint is responsible in some manner for one or more of the events and happenings, and proximately caused the injuries and damages, hereinafter alleged. Consequently, each Defendant is jointly and severally liable to Plaintiffs and the Class members for the damages sustained as a proximate result of their conduct.

## FACTUAL ALLEGATIONS

### A. The standard of care for the obstetrical treatment of pregnant women.

24. The standard of care is the level at which the average, prudent provider in obstetrics and gynecology would practice. It is how similarly qualified practitioners would have managed the patient's care under the same or similar circumstances.

25. Gathering health information in a clinical and unobtrusive manner is essential for building patient trust, creating an accurate history, and identifying potential health concerns. The standard of care in gynecology is to afford the

patient as much modesty as possible. Doctors should begin by taking a patient's health history in a private setting while the patient is fully clothed and prior to any physical examination.[4]

26. Taking a patient's medical history does not include invasive questions concerning sexual "likes" and "dislikes." At the outset of a gynecology patient visit, the physician should take a gynecologic medical history, including sexual history, before the patient disrobes. A brief set of screening questions relating to sexual history is adequate to determine whether a problem exists that requires further inquiry, namely whether the patient has sexual concerns, is having sexual relations, has a new partner or sexual contacts, uses protection from pregnancy and sexually transmitted infections, would like to be screened for sexually transmitted infections, needs contraception or preconceptional counseling, or is currently experiencing or has experienced previous sexual abuse. Doctors are expected to afford patients equal treatment and objective, non-judgmental counseling regardless of their sexual orientation or history.[5]

27. Informed consent is required. The decision to perform an internal pelvic examination, breast examination, or both should be made by the physician and the patient after shared communication and decision-making.

28. Presence of chaperones. In addition, chaperones are often present as a precautionary measure for pelvic examinations.

---

[4] Daniela A. Carusi, MD, MSc, *The Gynecologic History and Pelvic Examination*, UpToDate, Last Updated Mar. 27, 2017 (last accessed Aug. 15, 2018)(available at https://www.uptodate.com/contents/the-gynecologic-history-and-pelvic-examination).

[5] Committee Opinion, Heath Care for Lesbians and Bisexual Women, No. 525 (May 2012), https://www.acog.org/Clinical-Guidance-and-Publications/Committee-Opinions/Committee-on-Health-Care-for-Underserved-Women/Health-Care-for-Lesbians-and-Bisexual-Women.

29. Hygiene is important. Doctors should wash their hands before touching patients and they should wear gloves during pelvic and breast exams.

30. Diagnoses and records. All diagnoses should follow proper testing, and recommended treatments and medications should be in accordance with standard, up-to-date methods and research. All information from a patient's history and exam should be accurately recorded.

**B. <u>Women entrusted their medical care to Huntington Hospital.</u>**

31. Dr. Sutton has enjoyed a long career at Huntington Hospital, working there as a gynecologist obstetrician for more than three decades. Many of his patients were attracted by the prestige and infrastructure of the Hospital, and hoped to deliver their babies at Huntington. During his tenure at Huntington Hospital, however, Sutton has systematically violated the trust of vulnerable pregnant women who sought his care.

32. Even after Sutton was the subject of four sexual misconduct complaints before the Medical Board of California ("Medical Board"), and several disciplinary measures taken against him, Sutton was allowed to practice medicine at Huntington, and was included in a list of doctors on call to deliver babies at the hospital. He was even elected as the chair of Huntington Hospital's Obstetrics and Gynecology Department and was due to assume control of the department in January 2019. Only after the recent public attention brought by a fifth sexual misconduct complaint before the Medical Board did Huntington remove him from the list of on call doctors and remove his leadership role.

**C. <u>Sutton and Huntington Hospital's abuse of trust and violation of the standard of care.</u>**

33. Allegations of sexual misconduct against Sutton go back decades. Five of these cases have resulted in lawsuits or complaints being brought before the Medical Board of California, about which Huntington Hospital must have been aware.

34. In 1998, a female patient complained to the Medical Board that Sutton had made inappropriate sexual comments, slipped his hand under her pants, and slipped two fingers in her vagina. He was not wearing gloves, nor was there a nurse present. After an investigation, the board accused Sutton of gross negligence and sexual misconduct for "needlessly and inappropriately sexualizing her physical examination."

35. In 2005, while still on probation from the 1998 incident, Sutton was accused by two female patients of sexual battery and sexual harassment in a Los Angeles County Superior Court lawsuit. The women alleged improper touching, crude sexual comments and intrusive questions about their bodies and sexual habits. That accusation resulted in a confidential settlement.

36. Following a 2008 appointment with Sutton, another patient complained to the medical board about him. The woman said that Sutton asked her a series of explicit and inappropriate questions about her sexual practices and instructed her to call him to share "a fantasy or 'any new sexual adventure.'" In a settlement with the Medical Board, Sutton was placed on probation for three years and ordered to enroll in psychotherapy as well as another class on maintaining professional boundaries.

37. In the most recent accusation, the Medical Board alleged that Sutton in 2016 told a woman seeking treatment for a cyst "that he really could not see 'down there' because she was really hairy," according to the Board filing. After Sutton's female office assistant left the room to answer a telephone, according to the Medical Board filing, the doctor asked the woman, "Do you have sex?" She replied, "No," adding that she had an abusive relationship and now dedicated her life to her kids. Sutton continued pressing her, according to the court papers, asking, "Do you enjoy orgasms, you are a very beautiful woman?" The patient, who was wearing a paper gown, "was intimidated and did not know how to get out of the situation," the Medical Board filing said.

38. This behavior violates the standard of care, and comports with Plaintiffs' descriptions of their interactions with Sutton. Sutton's sexual misconduct while at Huntington Hospital has therefore been well documented and known to Huntington for more than a decade.

**D. <u>Plaintiffs' Experiences</u>**

*<u>Jane Doe K.G.</u>*

39. In 1998, Jane Doe K.G. learned that she was pregnant. She sought an Ob-Gyn, and she was delighted to find Sutton, a doctor who was on her insurance and who was associated with Huntington Memorial Hospital. Jane Doe K.G. found the facilities beautiful and wanted to deliver her baby there.

40. Jane Doe K.G. went to her first pregnancy appointment with her husband. Dr. Sutton reviewed the sonogram with them and confirmed the pregnancy.

41. During her subsequent visits, however, Sutton's behavior became inappropriate. He frequently made "arousal-type" sounds while examining her, and told her that she was a beautiful woman and that her husband must love her "boobs." At almost every visit, Sutton asked about her sex life with her husband, saying that sex was good for her and the baby, and that she should not ignore her husband's desires.

42. On December 27, 1998, Sutton induced Jane Doe K.G.'s labor two weeks early because he was going on vacation.

43. Following Jane Doe K.G.'s delivery, she next saw Sutton at her post-partum visit some weeks later. She brought her infant to the appointment, but not her husband.

44. During that visit, Dr. Sutton performed a vaginal exam on Jane Doe K.G., which she was not expecting at the time. There was no nurse in the room. During the exam, he commented that she was "tight" and that her husband must love it. He also made strange "arousal-type" sounds. He then barraged her with

questions about how frequently she and her husband had sex and about the difference between how it felt pre- and post-partum.

45. Sutton next groped Jane Doe K.G.'s breasts and told her that he wanted to "play with them." He added, "your husband must love to rub his penis there," "they are beautiful," and that he wished he "had a pair."

46. Jane Doe K.G. has thus been damaged by Sutton and Huntington Hospital's actions.

*Jane Doe T.F.*

47. In May 1990, Jane Doe T.F. learned that she was pregnant with her first child. She called her insurance company and asked for a nearby Ob-Gyn, and she was referred to Dr. Sutton.

48. At each visit, a nurse would bring Jane Doe T.F. to the exam room and ask initial questions. The nurse would then leave, and Sutton would conduct the examination alone, with no one else in the room. Given that this was her first pregnancy, she did not know that this was not normal.

49. Over the course of Jane Doe T.F.'s visits, Sutton began to make a series of inappropriate comments which became more sexually suggestive over time. Sutton was also "touch-feely" during the exams. He asked her about her relationship with her husband, and details related to sex and orgasms. When she asked him whether sex was safe to have during pregnancy, he responded, "the more sex, the better." Sutton has a constant preoccupation with sex. He also told her that she was "quite tight down there," and referred to her breasts as "perky little things."

50. On one occasion, Jane Doe T.F. called Sutton's office to ask if she was allowed to take medicine for her migraine headaches while pregnant. Sutton returned the call and told her that instead of taking medication for her migraine, she should masturbate in order to make the blood rush to her head, which according to him would stop the migraine. He told her to call him and let him know if she was

able to achieve orgasm through masturbation. Jane Doe T.F. did not follow his suggestion, nor did she contact him again about the topic.

51. On February 3, 1991, Jane Doe T.F. delivered her child at Huntington Memorial Hospital.

52. During Jane Doe T.F.'s post-natal visit with Sutton, he examined her episiotomy results and remarked that her "husband is going to love this."

53. Jane Doe T.F. has thus been damaged by Sutton and Huntington Hospital's actions.

*Jane Doe B.S.*

54. In 1991, Jane Doe B.S. learned that she was pregnant with her second child.

55. Because she was not receiving regular gynecological care at the time, Jane Doe B.S. found Dr. Sutton on a list of obstetricians provided to her by her health insurance.

56. During each office visit with Sutton, a female nurse would accompany Jane Doe B.S. into the room, but she would immediately leave before Sutton entered. Sutton always examined Jane Doe B.S. alone, with no one else in the room.

57. Dr. Sutton did not wear gloves while examining Jane Doe B.S.

58. Over the course of her visits, Sutton made constant inappropriate comments. He told her that she had a "young, tight uterus," and that her "boyfriend must love that." He continually referred to Jane Doe B.S.'s husband as her boyfriend, even though she reminded him each time that he was her husband. Sutton also told her that she was likely to have a C-section, which would be a shame because it would scar her "beautiful body."

59. On one occasion, Sutton told Jane Doe B.S. that he was going to listen to her heartbeat, but proceeded to place his stethoscope on her nipple.

60. Jane Doe B.S. has thus been damaged by Sutton and Huntington Hospital's actions.

**E. <u>The statute of limitations is tolled based on the continuing violations doctrine and fraudulent concealment.</u>**

61. Sutton concealed the existence of Plaintiffs' claims and the fact that Plaintiffs had a cause of action against Sutton and/or Huntington Hospital at the time his sexual assaults occurred by making material representation(s) to Plaintiffs involving a past or existing fact, including by misrepresenting that his acts and/or conduct were for a legitimate medical purpose and/or conformed to accepted medical practice.

62. When Sutton made the material representation(s), he knew that they were false in that he knew that the examinations were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or gynecology or obstetrics.

63. Sutton made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiffs and the Class in that Plaintiffs and Class members should believe that the examinations were proper, appropriate, and legitimate; should not believe that they had been sexually assaulted; should not believe that they had been sexually assaulted so that he could prevent discovery of his sexual assaults; should continue to be seen by him so that he could continue to sexually assault them; should not question and/or report the conduct to appropriate authorities; and should not reasonably believe and not be aware of a possible cause of action that they have against Sutton and/or Huntington Hospital.

64. Plaintiffs and Class members acted in reliance upon the material representation(s) in that they:

a. Reasonably believed that the examinations were proper, appropriate, and legitimate;

b. Reasonably did not believe that they had been sexually assaulted;

c. Did not believe that they should question and/or report the conduct to appropriate authorities; and,

d. Did not reasonably believe that they had and were not aware of a possible cause of action that they had against Sutton and/or Huntington Hospital.

65. Directors, managers, supervisors, physicians, nurses, and chaperones at Huntington Hospital took affirmative steps to fraudulently conceal Sutton's misconduct, including, but not limited to, by depressing complaints made by patients, and continuing to allow Sutton to treat female patients despite knowledge of his misconduct.

66. The actions and inactions of Sutton and Huntington Hospital constituted fraudulent concealment.

67. The statute of limitations for each of Plaintiffs' causes of actions was equitably tolled, and Defendants are equitably estopped from asserting the statute of limitations as a defense, by reason of their wrongful conduct.

68. As part of Defendants' wrongful attempt to conceal Sutton's propensity to sexually abuse female patients, and his past sexual abuse, from public scrutiny and criminal investigation, Defendants implemented various measures with the intent and effect of making Sutton's conduct harder to detect and ensuring that other student-patients with whom he came into contact, including Plaintiffs, would be sexually abused and assaulted, including:

a. Permitting Sutton to remain in a position of authority and trust after Huntington Hospital knew or should have known that he molested and harassed his female patients;

b. Scheduling female patients for appointments with Sutton, including appointments without a nurse or chaperone present, despite being aware of his improper conduct;

c. Granting Sutton unfettered access to and control over patients even when he was purporting to provide extremely sensitive gynecological treatment, thereby allowing Tyndall to physically and sexually interact with female patients, including Plaintiffs;

d. Holding out Sutton to Plaintiffs, other Huntington patients, and the public at large as a trustworthy person of good moral character who was capable and worthy of being granted unsupervised access to the patients of Huntington Hospital;

e. Failing to disclose and actively concealing Sutton's prior record of misconduct, sexual abuse, harassment, and molestation, and his propensity to commit such acts towards patients, from its patients, the public at large, and law enforcement;

f. Failing to investigate or otherwise confirm or deny such facts about Sutton, including prior complaints, claims, and investigations relating to sexual abuse suffered at his hands;

g. Failing to implement reasonable safeguards to avoid acts of unlawful sexual conduct by Sutton, such as by avoiding placement of Sutton in functions or environments in which he would necessarily have intimate contact with female patients; and

h. Failing to implement systems or procedures to supervise or monitor doctors to ensure that they did not molest or abuse patients in Defendants' care and, further, that they report all reasonable suspicions of sexual assault or battery to law enforcement as mandated by Section 11160 of the California Penal Code.

69. At all times pertinent to this action, Sutton was an agent, apparent agent, servant, and employee of Huntington Hospital and operated within the scope of his employment and his negligence is imputed to Huntington.

70. Defendants engaged in, joined in, and conspired with each other in carrying out the tortuous and unlawful activities herein described. Each Defendant is legally responsible for the occurrences herein alleged, and Plaintiff's damages, as herein alleged, were proximately caused by all Defendants.

71. Plaintiffs and Class members did not know, could not have reasonably known, and were not reasonably aware of a possible cause of action that they had against Sutton and/or Huntington until the October 2018 publication of a story about Sutton's misconduct in the Los Angeles Times.

## CLASS ACTION ALLEGATIONS

72. Pursuant to Federal Rule of Civil Procedure 23(b)(3) and 23(c)(4), Plaintiffs bring this action on behalf of themselves and the following class of others who are similarly situated:

> Nationwide Class: All women who were treated by Dr. Patrick Sutton during his employment by Huntington Hospital (the "National Class").

73. Excluded from the class are Defendants, their affiliates and subsidiaries, and their officers, directors, partners, employees, and agents; class counsel, their immediate family members, and employees of their firms; counsel for Defendants, their immediate family members, and employees of their firms; and judicial officers assigned to this case and their staffs and immediate family members.

74. Plaintiffs reserve the right to amend or modify the above class definition with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

75. The Class consists of hundreds, if not thousands, of women, making joinder impracticable, in satisfaction of Fed. R. Civ. P. 23(a)(1). The exact size of the Class and the identities of the individual members are ascertainable through records maintained by Huntington.

76. Numerosity. The members of the class are so numerous that their individual joinder is impracticable. Upon information and belief, there are thousands of class members, whose names and addresses are readily available from Defendants' records.

77. Commonality. There are questions of law and fact common to the class, which predominate over any questions affecting individual members of the class.

78. Typicality. Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and Class members were subjected to the same wrongful conduct and damaged in the same manner.

79. Existence and Predominance of Common Questions of Fact and Law. This action involves common questions of law and fact that predominate over any questions affecting individual class members, including, without limitation:

a. Whether Defendants owed a duty to Plaintiffs and Class members to protect their health and safety and not to violate their trust;

b. Whether Defendants breached their duties to Plaintiffs and Class members;

c. Whether Huntington Hospital knew of Sutton's misconduct, but continued to protect him and allow him access and opportunity to sexually abuse women;

d. Whether Defendants are liable for gender violence, in violation of the California Civil Code, § 52.4;

e. Whether Defendants are liable for invasion of privacy;

f. Whether Defendants are liable for sexual harassment, in violation of California Civil Code, § 51.9;

g. Whether Defendants are liable for sexual assault;

h. Whether Defendants are liable for sexual battery, in violation of California Civil Code, § 1708.5;

i. Whether Defendants are liable for negligence;

j. Whether Defendants are liable for gross negligence and/or wanton and reckless misconduct;

k. Whether Defendants are liable for negligent supervision;

l. Whether Defendants are liable for negligence *per se;*

m. Whether Defendants are liable for negligent hiring/retention;

n. Whether Defendants are liable for negligent failure to warn, train or educate; and

o. Whether Plaintiffs and Class members suffered harm as a result of Defendants' violations and, if so, the appropriate measure of damages, restitution, or rescission.

80. Adequacy of Representation. Plaintiffs are adequate class representatives. Their interests do not conflict with the interests of the other Class members they seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and they intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately pursue and protect the interests of the class.

81. Superiority. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The highly sensitive and private nature of the facts involved here counsels toward providing a class vehicle to adjudicate these claims. The damages or other financial detriment suffered by Plaintiffs and the other class members are relatively small compared to the burden and expense that would be required to individually litigate these claims. As a result, it would be impracticable for class members to seek redress individually. Individualized litigation would also create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management

difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

82. Particular Issues. The claims of Plaintiffs and Class members involve common issues that may be adjudicated on a classwide basis pursuant to Rule 23(c)(4).

**FIRST CLAIM FOR RELIEF**
**GENDER VIOLENCE, Cal. Civ. Code § 52.4**
**(Against Defendants Sutton and Huntington Hospital)**

83. Plaintiffs restate and incorporate herein by reference the preceding paragraphs as if fully set forth herein.

84. California Civil Code § 52.4 declares, in pertinent part, that any person subjected to gender violence may bring a civil action for damages against any responsible party, and may seek actual, compensatory, and punitive damages therefor, or any other appropriate relief.

85. For purposes of Cal. Civ. Code § 52.4, gender violence is a form of sex discrimination and means any of the following:

a. An act that would constitute a criminal offense under state law that has as an element the use, attempted use or threatened use of physical force against the person of another, committed at least in part based on the gender of the victim, whether or not the act has resulted in a criminal complaint, charge, prosecution, or conviction.

b. A physical intrusion or physical invasion of a sexual nature under coercive conditions, whether or not the act has resulted in a criminal complaint, charge, prosecution, or conviction.

86. Upon information and belief, Sutton intentionally and without consent of Plaintiffs or Class members, made unpermitted, harmful, and offensive sexual and/or other physical intrusion, invasion, or contact with Plaintiffs and Class

members in violation of Cal. Civ. Code § 52.4. At all relevant times, Defendant Sutton acted as a duly authorized agent and/or employee of Huntington Hospital.

87. Defendant Sutton carried out such actions and conduct as an employee, agent, and/or representative of Huntington, which provides medical treatment to the public.

88. Defendant Huntington Hospital is liable and vicariously liable for Defendant Sutton's conduct.

89. As a result of the conduct of the Defendants, Plaintiffs and the Class members sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, and damages (both economic and noneconomic), in the past, present and future, for which this claim is made. The injuries suffered by Plaintiffs and the Class members are substantial, continuing, and permanent.

90. Defendants' conduct as described herein was despicable and was committed maliciously, fraudulently, and/or oppressively with the wrongful intention of injuring Plaintiffs and the Class members and with a willful and conscious disregard of their rights, justifying an award of punitive damages.

91. As a proximate result of Sutton's acts, Plaintiffs and the Class members are entitled to actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief. Plaintiffs and the Class members are also entitled to an award of attorney's fees and costs pursuant to Cal. Civ. Code § 52.4.

## SECOND CLAIM FOR RELIEF
## SEXUAL HARASSMENT, Cal. Civ. Code § 51.9)
## (Against Defendants Sutton and Huntington)

92. Plaintiffs restate and incorporate herein by reference the preceding paragraphs as if fully set forth herein.

93. During Plaintiffs and the Class members' time as patients in the care of Defendants Sutton and Huntington, Sutton intentionally, recklessly, and wantonly made sexual advances, solicitations, requests, demands for sexual compliance of a hostile nature based on Plaintiffs and the Class members' gender that were unwelcome, pervasive, and severe, including but not limited to Sutton groping and fondling Plaintiffs' and the Class members' breasts and vaginas, and making lewd and inappropriate comments and propositions of a sexual nature, all under the supervision of Defendant Huntington Hospital, and acting in the course and scope of his agency with Defendant Huntington Hospital.

94. The incidents of abuse and harassment outlined herein above took place while Plaintiffs and Class members were under the control of Sutton and Huntington, in its capacity and position as supervisor of its own physicians, medical professionals, and staff.

95. During Plaintiffs' and the Class members' time as patients in the care of Defendants Sutton and Huntington, Sutton intentionally, recklessly, and wantonly did acts which resulted in harmful and offensive contact with intimate parts of their persons, including but not limited to, using his position of authority and trust to force Plaintiffs and Class members to endure Sutton's inappropriate sexual touching and comments.

96. Because of Plaintiffs' and the Class members' patient relationships with Sutton and Huntington, Plaintiffs and the Class members were unable to easily terminate the relationship they had with Defendant Sutton.

97. Because of Sutton's position of authority and trust, physical seclusion of Plaintiffs and the Class members, and Plaintiffs' and Class members' mental and emotional states, Plaintiffs and Class members were unable to, and did not and could not, give consent to such acts.

98. Even though Defendant Huntington Hospital knew or should have known of these activities by Sutton, Huntington did nothing to investigate, supervise, or monitor Sutton to ensure the safety of the patients in their care.

99. Because of Plaintiffs' and Class members' patient relationships with Defendants, Plaintiffs and Class members were unable to easily terminate the doctor-patient relationships they had with Defendants.

100. A corporation is a "person" within meaning of Cal. Civ. Code § 51.9, which subjects persons to liability for sexual harassment within a business, service, or professional relationship, and such an entity defendant may be held liable under this statute for the acts of its employees. Further, principles of ratification apply when the principal ratifies the agent's originally unauthorized harassment, as is alleged to have occurred herein.

101. Defendants' conduct (and the conduct of their agents) was a breach of their duties to Plaintiffs and Class members.

102. As a result of the above-described conduct, Plaintiffs and Class members suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## THIRD CLAIM FOR RELIEF
## SEXUAL ASSAULT
## (Against Defendant Sutton)

103. Plaintiffs restate and incorporate herein by reference the preceding paragraphs as if fully set forth herein.

104. Defendant Sutton, in doing the things herein alleged, including intending to subject Plaintiffs and Class members to numerous instances of sexual abuse and molestation during their time in the care of Defendants Sutton and Huntington, beginning in or around 1989, and lasting for the duration of Plaintiffs' and Class members' time as patients in Defendants' care, through or around October 2018, were intended to cause harmful or offensive contact with Plaintiffs and Class members' persons, or intended to put Plaintiffs and Class members in imminent apprehension of such contact.

105. In doing the things herein alleged, Defendants put Plaintiffs and Class members in imminent apprehension of a harmful or offensive contact by Sutton and actually believed that Sutton had the ability to make harmful or offensive contact with Plaintiffs' and Class members' persons.

106. Plaintiffs and the Class members did not consent to Sutton's intended harmful or offensive contact with Plaintiffs and Class members' persons, or intent to put Plaintiffs and Class members in imminent apprehension of such contact.

107. In doing the things herein alleged, Sutton violated Plaintiffs' and Class members' rights, pursuant to Cal. Civ. Code § 43, of protection from bodily restraint or harm, and from personal insult.

108. In doing the things herein alleged, Sutton violated his duty, pursuant to Cal. Civ. Code § 1708, to abstain from injuring the person of Plaintiffs and Class members or infringing upon their rights.

109. As a result of the above-described conduct, Plaintiffs and Class members have suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; have suffered and continue to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of

life; and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

110. Plaintiffs and Class members are informed and based thereon allege that the conduct of Defendants was oppressive, malicious, and despicable in that it was intentional and done in conscious disregard for the rights and safety of others, and were carried out with a conscious disregard of their right to be free from such tortious behavior, such as to constitute oppression, fraud, or malice pursuant to Cal. Civ. Code § 3294, entitling Plaintiffs and Class members to punitive damages against Defendants in an amount appropriate to punish and set an example of Defendants.

**FOURTH CLAIM FOR RELIEF**
**SEXUAL BATTERY, Cal. Civ. Code § 1708.5**
**(Against Defendant Sutton)**

111. Plaintiffs restate and incorporate herein by reference the preceding paragraphs as if fully set forth herein.

112. During Plaintiffs' and Class members' time as patients in the care of Defendants Sutton and Huntington, Sutton intentionally, recklessly, and wantonly did acts which were intended to, and did result in harmful and offensive contact with intimate parts of Plaintiffs and Class members' persons, including but not limited to being subjected to numerous instances of sexual harassment and abuse by Sutton, beginning in or around 1989, and lasting for the duration of Plaintiffs and Class members' time as patients in Defendants' care, all while Sutton acted in the course and scope of his agency and employment with Huntington Hospital.

113. Sutton performed the aforementioned acts with the intent to cause a harmful or offensive contact with intimate parts of Plaintiffs and Class members' bodies, which would offend a reasonable sense of personal dignity. Further, said acts did cause a harmful or offensive contact with intimate parts of Plaintiffs' and Class members' persons that would offend a reasonable sense of personal dignity.

114. Defendant Sutton carried out such actions and conduct as an employee, agent, and/or representative of Huntington, which provides medical treatment to the public.

115. Because of Sutton's position of authority and trust as a physician, and their mental and emotional state as his patients, Plaintiffs and Class members did not give meaningful consent to such acts.

116. As a direct, legal, and proximate result of the acts of Sutton and Huntington, Plaintiffs and Class members sustained serious and permanent injuries to their persons, all of this damage in an amount to be shown according to proof and within the jurisdiction of the Court.

117. As a direct result of the sexual abuse by Sutton, Plaintiffs and Class members have difficulty in reasonably or meaningfully interacting with others, including those in positions of authority over them such as doctors, and in intimate, confidential, and familial relationships, due to the trauma of the sexual abuse inflicted upon them by Defendants Sutton and Huntington. This inability to interact creates conflict with Plaintiffs and Class members' values of trust and confidence in others, and has caused Plaintiffs and Class members substantial emotional distress, anxiety, nervousness, and fear. As a direct result of the sexual abuse and molestation by Sutton, Plaintiffs and Class members suffered immensely, including, but not limited to, encountering issues with a lack of trust, various psychological sequelae, depressive symptoms, anxiety, nervousness, and self-medicating behavior.

118. Upon information and belief, the conduct of Sutton was oppressive, malicious, and despicable in that it was intentional and done in conscious disregard for the rights and safety of others, and was carried out with a conscious disregard of Plaintiffs' and Class members' right to be free from such tortious behavior, such as to constitute oppression, fraud, or malice pursuant to Cal. Civ. Code § 3294,

entitling Plaintiffs and Class members to punitive damages against Sutton in an amount appropriate to punish and set an example of Sutton.

## FIFTH CLAIM FOR RELIEF
## NEGLIGENCE
## (Against Defendant Huntington Hospital)

119. Plaintiffs restate and incorporate herein by reference the preceding paragraphs as if fully set forth herein.

120. From approximately 1989 through 2018, Sutton was an actual and/or apparent, duly authorized agent, servant, and/or employee of Huntington Hospital, providing medical treatment and services through the Huntington system. Defendant Huntington Hospital knew and/or should have known that Sutton had and was capable of sexually, physically, and mentally abusing and harassing Plaintiffs or other victims.

121. Defendant Huntington Hospital had special duties to protect the Plaintiffs and Class members, when such individuals were patients entrusted to Defendants' care. Plaintiffs and Class members' care and health were entrusted to Defendants. Defendant Huntington Hospital voluntarily accepted the entrusted care of Plaintiffs and Class members. As such, Defendant Huntington Hospital owed Plaintiffs and Class members a special duty of care that medical professionals dealing with vulnerable medical patients owe to protect them from harm. The duty to protect and warn arose from the special, trusting, confidential, and fiduciary relationship between Defendant Huntington Hospital and Plaintiffs and Class members.

122. Defendant Huntington breached its duty of care to Plaintiffs and Class members by allowing Sutton to come into contact with Plaintiffs and Class members without effective supervision; by failing to adequately hire, supervise, and retain Sutton whom they permitted and enabled to have access to Plaintiffs and Class members; by concealing from Plaintiffs and Class members, the public, and

law enforcement that Sutton was sexually harassing, molesting, and abusing patients; by holding Sutton out to Plaintiffs and Class members as being of high moral and ethical repute, in good standing and trustworthy; and by failing to report Sutton's misconduct to the California Medical Board.

123. Defendant Huntington Hospital further breached its duties to Plaintiffs and Class members by failing to investigate or otherwise confirm or deny such facts of sexual abuse by Sutton, failing to reveal such facts to Plaintiffs and Class members, the community and law enforcement agencies, and by placing Sutton into a position of trust and authority, holding him out to Plaintiffs, Class members, and the public as being in good standing and trustworthy.

124. Defendant Huntington Hospital breached its duty to Plaintiffs and Class members by failing to adequately monitor and supervise Defendant Sutton and failing to prevent Defendant Sutton from committing wrongful sexual acts with medical patients, including Plaintiffs and Class members. Defendant Huntington's past records of sexual misconduct by Sutton caused Defendant Huntington Hospital to know, or gave it information where it should have known, of Sutton's incapacity to serve as a physician – especially an obstetrician/gynecologist – providing for the safe care of female patients.

125. As a direct, proximate, and foreseeable result of the above-described conduct, Plaintiffs and Class members have suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; may sustain loss of earnings and earning capacity; and may incur expenses for medical and psychological treatment, therapy, and counseling.

## SIXTH CLAIM FOR RELIEF
## GROSS NEGLIGENCE AND/OR WANTON AND RECKLESS MISCONDUCT
## (Against Defendants Sutton and Huntington Hospital)

126. Plaintiffs restate and incorporate herein by reference the preceding paragraphs as if fully set forth herein, and to the extent necessary, plead this claim for relief in the alternative.

127. Huntington Hospital owed Plaintiffs and Class members a duty to use due care to ensure their safety and freedom from sexual assault, harassment, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Defendant Sutton.

128. Defendant Sutton owed Plaintiffs and Class members a duty of due care in carrying out his duties in a reasonable safe manner as an employee, agent, and/or representative of Huntington Hospital.

129. By seeking medical treatment from Defendant Sutton in the course of his employment, agency, and/or representation of Huntington Hospital, a special, confidential, and fiduciary relationship between Plaintiffs and Class members and Defendant Sutton was created, resulting in Defendant Sutton owing Plaintiffs and Class members a duty to use due care.

130. Huntington Hospital's failure to adequately supervise Defendant Sutton – especially once they knew or should have known of complaints regarding his nonconsensual sexual touching, harassment, boundary violations, and assaults during treatment of patients – was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and Class members.

131. Defendant Sutton's conduct in sexually assaulting, harassing, abusing, and violating Plaintiffs and Class members in the course of his employment, agency, and/or representation of Huntington and under the guise of rendering medical care was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and Class members.

132. Huntington Hospital's conduct demonstrated a willful disregard for precautions to ensure Plaintiffs and Class members' safety.

133. Huntington Hospital's conduct demonstrated a willful disregard for Plaintiffs and Class members' rights.

134. Huntington Hospital breached duties owed to Plaintiffs and Class members and was grossly negligent when it conducted itself by the actions described above, said acts having been committed with reckless disregard for Plaintiffs and Class members' health, safety, Constitutional, and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

135. As a result of Defendant's conduct, Plaintiffs and Class members sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, and damages (both economic and noneconomic), in the past, present and future, for which this claim is made. The injuries suffered by Plaintiffs and Class members are substantial, continuing, and permanent.

136. Defendants' conduct as described herein was grossly negligent and/or wanton and reckless because it was despicable and was committed maliciously, fraudulently, and/or oppressively with the wrongful intention of injuring Plaintiffs and Class members and with a willful and conscious disregard of Plaintiffs and Class members' rights, justifying an award of punitive damages.

## SEVENTH CLAIM FOR RELIEF
## NEGLIGENT SUPERVISION
## (Against Defendant Huntington Hospital)

137. Plaintiffs restate and incorporate herein by reference the preceding paragraphs as if fully set forth herein.

138. By virtue of Plaintiffs and Class members' special relationship with Defendant Huntington, and Huntington's relationship with Defendant Sutton, Defendant Huntington Hospital owed Plaintiffs and Class members a duty to

provide reasonable supervision of Sutton, to use reasonable care in investigating Sutton background, and to provide adequate warning to Plaintiffs and Class members of Sutton's dangerous propensities and unfitness. As an organization responsible for, and entrusted with, the welfare of patients, Huntington had a duty to protect, supervise, and monitor both the Plaintiffs and Class members from being preyed upon by sexual predators, and to supervise and monitor Sutton such that he would not be placed in seclusion with vulnerable medical patients, including the Plaintiffs and Class members.

139. Huntington expressly and implicitly represented that its physicians, faculty, and staff, including Sutton, were not a sexual threat to those individuals and others who would fall under Sutton's influence, control, direction, and care.

140. Defendant Huntington Hospital, by and through its respective agents, servants, and employees, knew or should have known of Sutton's dangerous and exploitive propensities and that Sutton was an unfit agent and physician. Despite such knowledge, Defendant Huntington Hospital negligently failed to supervise Sutton in his position of trust and authority as a physician and authority figure over patients, such that he was able to commit wrongful acts of sexual misconduct against Plaintiffs and Class members. Defendant Huntington Hospital failed to provide reasonable supervision of Sutton, failed to use reasonable care in investigating Sutton, and failed to provide adequate warning to Plaintiffs of Sutton's dangerous propensities and unfitness. Defendant Huntington Hospital further failed to take reasonable steps to ensure the safety of patients, including Plaintiffs and Class members, from sexual harassment, molestation, and abuse.

141. At no time during the periods of time alleged herein did Defendant Huntington Hospital have in place a reasonable system or procedure to investigate, supervise physicians or staff, including Sutton, to prevent sexual harassment, molestation, and abuse of those individuals, nor did they implement a system or

procedure to oversee or monitor conduct toward patients and others in Defendant Huntington Hospital's care.

142. Defendant Huntington Hospital were aware or should have been aware of how vulnerable medical patients – especially ob/gyn patients -- were to sexual harassment, molestation, and abuse by physicians and other persons of authority within Defendant Huntington Hospital.

143. Defendant Huntington Hospital was put on notice, knew, and/or should have known that Sutton had previously engaged and was continuing to engage in unlawful sexual conduct with patients and had committed other felonies, for his own personal sexual gratification, and that it was foreseeable that he was engaging, or would engage in illicit sexual activities with or make entirely inappropriate sexual statements to Plaintiffs and Class members, and others, under the cloak of the authority, confidence, and trust, bestowed upon him by Defendant Huntington Hospital.

144. Defendant Huntington Hospital was placed on actual or constructive notice that Sutton had molested and made entirely inappropriate sexual statements to other patients during his employment with Defendant Huntington Hospital. However, Defendant Huntington Hospital did not reasonably investigate, supervise, or monitor Sutton to ensure the safety of the patients.

145. Defendant Huntington Hospital's conduct was a breach of its duties to Plaintiffs and Class members.

146. Defendant Huntington Hospital breached its duty to Plaintiffs by, *inter alia*, failing to adequately monitor and supervise Sutton and prevent and stop Sutton from committing wrongful sexual acts with or making entirely inappropriate sexual statements to patients, including Plaintiffs and Class members.

147. As a result of the above-described conduct, Plaintiffs and Class members have suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including

embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; may sustain loss of earnings and earning capacity, and/or may incur expenses for medical and psychological treatment, therapy, and counseling.

## EIGHTH CLAIM FOR RELIEF
## NEGLIGENT HIRING/RETENTION
## (Against Defendant Huntington Hospital)

148. Plaintiffs restate and incorporate herein by reference the preceding paragraphs as if fully set forth herein.

149. By virtue of Plaintiffs' and Class members' special relationship with Defendants, and Huntington's relation to Sutton, Defendant Huntington Hospital owed Plaintiffs and Class members a duty to not hire or retain Sutton, given his dangerous and exploitive propensities, which Defendant Huntington Hospital knew or should have known about had it engaged in a reasonable, meaningful, and adequate investigation of his background prior to his hiring or retaining him in subsequent positions of employment.

150. Defendant Huntington Hospital expressly and implicitly represented that the physicians, including Defendant Sutton, were not a sexual threat to patients and others who would fall under Defendant Sutton's influence, control, direction, and guidance.

151. At no time during the periods of time alleged did Defendant Huntington Hospital have in place a reasonable system or procedure to investigate, supervise, and monitor its physicians and healthcare professionals, including Sutton, to prevent pre-sexual grooming or sexual harassment, molestation, and abuse of patients nor did they implement a system or procedure to oversee or monitor conduct toward patients and/or others in Defendant Huntington Hospital's care.

152. Defendant Huntington Hospital was aware or should have been aware and understand how vulnerable female patients were to sexual harassment, molestation, and abuse by physicians and other persons of authority within the control of Defendant Huntington Hospital prior to Plaintiffs' and Class members' sexual abuse by Sutton.

153. Defendant Huntington Hospital was put on notice, and should have known, that Sutton had previously engaged and continued to engage in unlawful sexual conduct with patients, and was committing other felonies, for his own sexual gratification, and that it was, or should have known it would have been, foreseeable that he was engaging, or would engage in illicit sexual activities with or making entirely inappropriate sexual statements to Plaintiffs and Class members, under the cloak of his authority, confidence, and trust, bestowed upon him through Defendant Huntington Hospital.

154. Even though Defendant Huntington Hospital knew or should have known of these sexually illicit activities and statements by Sutton, Defendant Huntington Hospital failed to use reasonable care in investigating Defendant Sutton and did nothing to reasonably investigate, supervise, or monitor Sutton to ensure the safety of its patients.

155. Defendant Huntington Hospital's conduct was a breach of its duties to Plaintiffs and Class members.

156. As a result of the above-described conduct, Plaintiffs and Class members suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; have suffered and continues to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and

will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

157. Defendant Huntington Hospital owed Plaintiffs and Class members a duty to take reasonable protective measures to protect Plaintiffs and Class members and other patients from the risk of sexual harassment, molestation, and abuse by Defendant Sutton by properly warning, training, or educating Plaintiffs and Class members and other about how to avoid such a risk.

158. Defendant Huntington Hospital breached its duty to take reasonable protective measures to protect Plaintiffs and other patients from the risk of sexual harassment, molestation, and abuse by Defendant Sutton, such as the failure to properly warn, train or educate Plaintiffs and Class members about how to avoid such a particular risk that Sutton posed—of sexual misconduct.

159. Defendant Huntington Hospital breached its duty to take reasonable protective measures to protect Plaintiffs and Class members from the risk of sexual harassment, molestation, and abuse by Defendant Sutton, by failing to supervise and stop its employees, including Sutton, from committing wrongful sexual acts with patients, including Plaintiffs and Class members.

160. As a result of the above-described conduct, Plaintiffs and Class members suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

**NINTH CLAIM FOR RELIEF**
**NEGLIGENT FAILURE TO WARN, TRAIN, or EDUCATE**
**(Against Defendant Huntington Hospital)**

161. Plaintiffs restate and incorporate herein by reference the preceding paragraphs as if fully set forth herein.

162. Defendant Huntington Hospital owed Plaintiffs and Class members a duty to take reasonable protective measures to protect them and other patients from the risk of sexual harassment, molestation, and abuse by Defendant Sutton by properly warning, training, or educating Plaintiffs and Class members and other about how to avoid such a risk.

163. Defendant Huntington Hospital breached its duty to take reasonable protective measures to protect Plaintiffs, Class members and other patients from the risk of sexual harassment, molestation, and abuse by Defendant Sutton, such as the failure to properly warn, train, or educate Plaintiffs and Class members and other patients about how to avoid such a particular risk that Sutton posed—of sexual misconduct.

164. Defendant Huntington Hospital breached its duty to take reasonable protective measures to protect Plaintiffs, Class members, and other patients from the risk of sexual harassment, molestation, and abuse by Defendant Sutton, by failing to supervise and stop its employees, including Sutton, from committing wrongful sexual acts with patients, including Plaintiffs and Class members.

165. As a result of the above-described conduct, Plaintiffs and Class members have suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and

will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class defined above, respectfully requests that the Court:

A. Certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiffs as class representatives, and appoint the undersigned counsel as class counsel;

B. Award Plaintiffs and Class members compensatory, restitutionary, rescissory, general, consequential, punitive, and/or exemplary damages in an amount to be determined at trial;

C. Award pre-judgment interest as permitted by law;

D. Enter appropriate equitable relief;

E. Award reasonable attorneys' fees and costs, as provided for by law; and

F. Grant such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: October 10, 2018 Respectfully submitted,

By:________________________

Jonathan D. Selbin (Bar No. 170222)
Annika K. Martin (*pro hac vice* pending)
Valerie D. Comenencia Ortiz
jselbin@lchb.com
akmartin@lchb.com
vcomenenciaortiz@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

Joseph G. Sauder (*pro hac vice* pending)
Matthew D. Schelkopf
Lori G. Kier
jgs@sstriallawyers.com
mds@sstriallawyers.com
lgk@sstriallawyers.com
SAUDER SCHELKOPF LLC
555 Lancaster Avenue
Berwyn, Pennsylvania 19312
Telephone: 888.711.9975
Facsimile: 610-421-1326

Marc L. Godino (Bar No. 182689)
mgodino@glancylaw.com
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310-201-9150
Facsimile: 310-201-9160

*Counsel for Plaintiffs and the Putative Class*