Jonathan D. Selbin (State Bar No. 170222)
jselbin@lchb.com
Annika K. Martin
akmartin@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000

Joseph G. Sauder
jgs@sstriallawyers.com
SAUDER SCHELKOPF LLC
555 Lancaster Avenue
Berwyn, Pennsylvania 19312
Telephone:  888.711.9975


[additional attorneys listed on signature page]

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| JANE DOE K.G., JANE DOE T.F., JANE DOE B.S., and JANE DOE W.D., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PASADENA HOSPITAL ASSOCIATION, LTD., d/b/a HUNTINGTON MEMORIAL HOSPITAL, THE MEDICAL STAFF OF HUNTINGTON MEMORIAL HOSPITAL, and PATRICK SUTTON, M.D.;<br><br>Defendants. | Case No. 2:18-cv-8710-ODW (AFMx)<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

# TABLE OF CONTENTS

**Page**

NATURE OF THE ACTION ..................................................................... 1

JURISDICTION AND VENUE .................................................................. 3

PARTIES ................................................................................................. 3

FACTUAL ALLEGATIONS ...................................................................... 5

    A.    The standard of care for the obstetrical treatment of pregnant women. ................................................................................... 5

    B.    Women entrusted their medical care to Huntington Hospital and the Medical Staff. ...................................................................... 7

    C.    The abuse of trust and violation of the standard of care by Sutton, Huntington Hospital, and the Medical Staff. ................... 7

    D.    Plaintiffs' Experiences .......................................................... 9

    E.    The statute of limitations is tolled based on the continuing violations doctrine and fraudulent concealment. ....................... 14

CLASS ACTION ALLEGATIONS ............................................................ 18

FIRST CLAIM FOR RELIEF GENDER VIOLENCE, Cal. Civ. Code § 52.4 (Against Defendants Sutton, the Medical Staff, and Huntington Hospital) .......................................................................... 21

SECOND CLAIM FOR RELIEF SEXUAL HARASSMENT, Cal. Civ. Code § 51.9 (Against Defendants Sutton, the Medical Staff, and Huntington) ..... 22

THIRD CLAIM FOR RELIEF SEXUAL ASSAULT (Against Defendant Sutton) ......................................................................................... 24

FOURTH CLAIM FOR RELIEF SEXUAL BATTERY, Cal. Civ. Code § 1708.5 (Against Defendant Sutton) ......................................................... 26

FIFTH CLAIM FOR RELIEF NEGLIGENCE (Against Defendants Huntington Hospital and the Medical Staff) ................................................... 27

SIXTH CLAIM FOR RELIEF GROSS NEGLIGENCE AND/OR WANTON AND RECKLESS MISCONDUCT (Against Defendants Sutton, the Medical Staff, and Huntington Hospital) ........................................ 30

SEVENTH CLAIM FOR RELIEF NEGLIGENT SUPERVISION (Against Defendants Huntington Hospital and the Medical Staff) ..................... 31

EIGHTH CLAIM FOR RELIEF NEGLIGENT HIRING/RETENTION (Against Defendants Huntington Hospital and the Medical Staff) .............. 34

NINTH CLAIM FOR RELIEF NEGLIGENT FAILURE TO WARN, TRAIN, or EDUCATE (Against Defendants Huntington Hospital and the Medical Staff) .......................................................................... 37

PRAYER FOR RELIEF ........................................................................ 38

Plaintiffs Jane Doe K.G., Jane Doe T.F., Jane Doe B.S., and Jane Doe W.D. ("Plaintiffs"), on behalf of themselves and all others similarly situated, file this class action against Huntington Memorial Hospital ("Huntington Hospital" or "Huntington"), The Medical Staff of Huntington Memorial Hospital ("Medical Staff"), and Patrick Sutton, M.D. ("Sutton"), and allege as follows:

## NATURE OF THE ACTION

1. This is a class action on behalf of individuals who were sexually abused, harassed, and molested by Defendant Dr. Patrick Sutton, while they were patients in the care of Defendants Sutton, Huntington Hospital, and the Medical Staff.

2. Trust is an essential part of the relationship between physician and patient. "Without trust, how could a physician expect patients to reveal the full extent of their medically relevant history, expose themselves to the physical exam, or act on recommendations for tests or treatments?"[1]

3. "Presumed consent is a critical manifestation of trust that makes possible much of routine doctor visits."[2] Absent a presumption of trust, patients might avoid essential medical care.

4. "Important as it is to measure trust in individual clinicians and the actions and circumstances that affect it, it is equally important, in today's health system, to study (empirically and normatively) trust and trustworthiness in organizations and institutions."[3]

5. Patrick Sutton, M.D. violated this trust by taking advantage of female patients who sought women's-health-related medical care from a

---

[1] Susan Dorr Goold, MD, MHSA, MA, *Trust, Distrust and Trustworthiness: Lessons from the Field*, 17 J. GEN. INTERNAL MED. 79, 79–81 (2002) (citations omitted).

[2] *Id.*, citing Ruth Faden & Tom Beauchamp, A HISTORY AND THEORY OF INFORMED CONSENT 274–80 (Oxford Univ. Press 1986).

[3] *Id.*

1  gynecologist/obstetrician at Huntington Hospital. These women were highly
2  vulnerable: naked or partially unclothed in a closed examination room with the
3  expectation that physical contact would occur for medical treatment only in
4  accordance with the applicable standard of care.

5       6.    Sutton used his position of trust and authority at Huntington Hospital
6  to sexually abuse Plaintiffs on multiple occasions, by engaging in acts that include
7  but are not limited to: inappropriate and not-medically-necessary sexualized
8  touching during gynecological examinations and treatment, and lewd and
9  threatening sexualized questions and comments to patients during examinations and
10 outside the medical setting, in public places.

11      7.    As is typical with sexual predators, Sutton had a pattern of behavior
12 and a common course of conduct that he exhibited towards all his victims,
13 including Plaintiffs and Class members.

14      8.    Over the years that Sutton has been at Huntington, numerous Class
15 members have made eerily similar complaints about his inappropriate, abusive, and
16 harassing behavior, including, but not limited to: Sutton making suggestive
17 comments about patients' bodies during gynecological examinations; touching
18 patients' bodies in a manner that had no medical purpose; improper touching; crude
19 sexual comments; and intrusive questions about their bodies and sexual habits.

20      9.    Huntington Hospital and the Medical Staff had a duty to ensure that
21 Sutton used his trusted position consistent with the applicable standard of care and
22 to ensure that Sutton did not violate that trust by abusing and harassing patients.

23      10.   As a medical doctor, and as an actual and/or apparent, duly authorized
24 agent, servant, and/or employee of Huntington Hospital and the Medical Staff,
25 Sutton owed Plaintiffs and Class members a duty of due care in carrying out
26 medical treatment.

27      11.   Despite the fact that Huntington has publicly admitted that it received
28 numerous complaints of Sutton's sexually abusive behavior, dating back to at least

1998, Huntington and its Medical Staff actively and deliberately concealed Sutton's sexual abuse for years, continuing to grant Sutton unfettered access to the female Huntington patients in his care, all to protect Huntington's reputation and financial coffers.

12.     Plaintiffs seek appropriate relief on behalf of the other individuals who experienced similar mistreatment by Sutton, Huntington, and the Medical Staff.

## JURISDICTION AND VENUE

13.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because: (a) Plaintiffs seek to represent a nationwide class of the hundreds, or thousands, of individuals sexually abused, harassed, and molested by Defendant Dr. Patrick Sutton, (b) the amount in controversy exceeds $5,000,000, excluding interest and costs, (c) the proposed class consists of more than 100 individuals, and (d) none of the exceptions under the subsection applies to this action.

14.     This Court has personal jurisdiction over Defendants. They conduct substantial business in this District and intentionally availed themselves of the laws and markets of this District. A significant portion of the acts and omissions complained of occurred in the District, and Plaintiffs and many class members suffered harm in the District.

15.     Venue is proper in this District under 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

*Plaintiffs*

16.     Given the sensitive nature of their claims, Plaintiffs are using pseudonyms in this litigation to protect their privacy. If required by the Court, Plaintiffs will seek permission to proceed under these pseudonyms.

17.    Plaintiff Jane Doe K.G. is a resident of Flagstaff, Arizona, and a citizen of the United States.

18.    Plaintiff Jane Doe T.F. is a resident of Palmdale, California, and a citizen of the United States.

19.    Plaintiff Jane Doe B.S. is a resident of Claremont, California, and a citizen of the United States.

20.    Plaintiff Jane Doe W.D. is a resident of Pasadena, California, and a citizen of the United States.

*Defendants*

21.    Defendant Patrick Sutton, M.D. was and is a resident of Altadena, California, and a citizen of the United States.

22.    In or about 1989, Sutton started working at Huntington Hospital as an obstetrician/gynecologist. At all relevant times, Sutton was an actual and/or apparent, duly authorized agent, servant, and/or employee of Defendants Huntington Hospital and the Medical Staff and carried on an obstetrics/gynecological medical practice in Pasadena, California, as part of his actual and/or apparent agency, service, and/or employment.

23.    Defendant Pasadena Hospital Association, Ltd. d/b/a Huntington Memorial Hospital is a California nonprofit corporation having its principal place of business in California; and doing business in Los Angeles County, California.

24.    Defendant The Medical Staff of Huntington Memorial Hospital is a California organization having its principal place of business in California; and doing business in Los Angeles County, California. The Medical Staff is the formal organization of all licensed Physicians, dentists, and podiatrists who are privileged to attend patients in Huntington Hospital. It is responsible for the quality of medical care at Huntington and "participates in the development of Hospital policies."[4] In

---

[4] Huntington Hospital Medical Staff Bylaws (Eff. September 25, 2014), Preamble, https://www.huntingtonhospital.org/documents/Medical-Staff-Privilege-

*Footnote continued on next page*

collaboration with Defendant Huntington, the Medical Staff sets and conducts procedures for physicians' appointment and privileges, the ongoing review and evaluation of practitioners' performance, and investigations and disciplinary actions.

25.     Upon information and belief, each of the Defendants named in this Complaint is responsible in some manner for one or more of the events and happenings, and proximately caused the injuries and damages, hereinafter alleged. Consequently, each Defendant is jointly and severally liable to Plaintiffs and the Class members for the damages sustained as a proximate result of their conduct.

## **FACTUAL ALLEGATIONS**

A.     **The standard of care for the obstetrical treatment of pregnant women.**

26.     The standard of care is the level at which the average, prudent provider in obstetrics and gynecology would practice. It is how similarly qualified practitioners would have managed the patient's care under the same or similar circumstances.

27.     Gathering health information in a clinical and unobtrusive manner is essential for building patient trust, creating an accurate history, and identifying potential health concerns. The standard of care in gynecology is to afford the patient as much modesty as possible. Doctors should begin by taking a patient's health history in a private setting while the patient is fully clothed and prior to any physical examination.[5]

_____

*Footnote continued from previous page*
Forms/Bylaws-Rules-Regulations-/Bylaws.pdf (last accessed Jan. 4, 2019).

[5] Daniela A. Carusi, MD, MSc, *The Gynecologic History and Pelvic Examination*, UpToDate, Last Updated Oct. 15, 2018 (last accessed Jan. 4, 2019)(available at https://www.uptodate.com/contents/the-gynecologic-history-and-pelvic-examination).

28.     Taking a patient's medical history does not include invasive questions concerning sexual "likes" and "dislikes." At the outset of a gynecology patient visit, the physician should take a gynecologic medical history, including sexual history, before the patient disrobes. A brief set of screening questions relating to sexual history is adequate to determine whether a problem exists that requires further inquiry, namely whether the patient has sexual concerns, is having sexual relations, has a new partner or sexual contacts, uses protection from pregnancy and sexually transmitted infections, would like to be screened for sexually transmitted infections, needs contraception or preconceptional counseling, or is currently experiencing or has experienced previous sexual abuse. Doctors are expected to afford patients equal treatment and objective, non-judgmental counseling regardless of their sexual orientation or history.[6]

29.     Informed consent is required. The decision to perform an internal pelvic examination, breast examination, or both should be made by the physician and the patient after shared communication and decision-making.

30.     Presence of chaperones. In addition, chaperones are often present as a precautionary measure for pelvic examinations.

31.     Hygiene is important. Doctors should wash their hands before touching patients and they should wear gloves during pelvic and breast exams.

32.     Diagnoses and records. All diagnoses should follow proper testing, and recommended treatments and medications should be in accordance with standard, up-to-date methods and research. All information from a patient's history and exam should be accurately recorded.

---

[6] Committee Opinion, Heath Care for Lesbians and Bisexual Women, No. 525 (May 2012), https://www.acog.org/Clinical-Guidance-and-Publications/Committee-Opinions/Committee-on-Health-Care-for-Underserved-Women/Health-Care-for-Lesbians-and-Bisexual-Women.

**B.** **Women entrusted their medical care to Huntington Hospital and the Medical Staff.**

33.     Dr. Sutton has enjoyed a long career at Huntington Hospital, working there as a gynecologist obstetrician for more than three decades. Many of his patients were attracted by the prestige and infrastructure of the Hospital, and hoped to deliver their babies at Huntington. During his tenure at Huntington Hospital, however, Sutton has systematically violated the trust of vulnerable pregnant women who sought his care.

34.     Even after Sutton was the subject of four sexual misconduct complaints before the Medical Board of California ("Medical Board"), and several disciplinary measures were taken against him, Huntington Hospital and the Medical Staff failed to take the appropriate steps to protect Plaintiffs[7]. Sutton was allowed to continue practicing medicine at Huntington, and was included in a list of doctors on call to deliver babies at the hospital. He was publicly listed in the Hospital's Physician Directory, with contact information about his primary office. He was even elected as the chair of Huntington Hospital's Obstetrics and Gynecology Department and was due to assume control of the department in January 2019. Only after the recent public attention brought by a fifth sexual misconduct complaint before the Medical Board did Huntington and the Medical Staff remove him from the list of on call doctors and remove his leadership role.

**C.** **The abuse of trust and violation of the standard of care by Sutton, Huntington Hospital, and the Medical Staff.**

35.     Allegations of sexual misconduct against Sutton go back decades. Top Huntington Hospital and Medical Staff administrators received repeated warnings about Sutton's misconduct throughout that period.[8]

---

[7] See general history and Medical Board Decisions at Medical Board of California, *Licensing Details for Sutton, Patrick Mark*, https://search.dca.ca.gov/details/8002/G/53929/3ec7f306f1f30a6f2134d37cd88af3c2 (last accessed on Jan. 4, 2019).

[8] Harriet Ryan and Matt Hamilton, *More than 20 women accused a prominent*
*Footnote continued on next page*

                                                                       SECOND AMENDED CLASS ACTION COMPLAINT
Case No. 2:18-cv-8710

36.     Five of the sexual misconduct allegations against Sutton have resulted in lawsuits or complaints being brought before the Medical Board of California, about which Huntington Hospital and the Medical Staff should have been aware.

37.     In 1998, a female patient complained to the Medical Board that Sutton had made inappropriate sexual comments, slipped his hand under her pants, and slipped two fingers into her vagina.[9] He was not wearing gloves, nor was there a nurse present. After an investigation, the Board accused Sutton of gross negligence and sexual misconduct for "needlessly and inappropriately sexualizing her physical examination." In 2005, while still on probation from the 1998 incident, Sutton was accused by two female patients of sexual battery and sexual harassment in a Los Angeles County Superior Court lawsuit. The women alleged improper touching, crude sexual comments and intrusive questions about their bodies and sexual habits. That accusation resulted in a confidential settlement.

38.     Following a 2008 appointment with Sutton, another patient filed a complaint against him before the Medical Board. The woman said that Sutton asked her a series of explicit and inappropriate questions about her sexual practices and instructed her to call him to share "a fantasy or 'any new sexual adventure.'" In a settlement with the Medical Board, Sutton was placed on probation for three years and ordered to enroll in psychotherapy as well as a class on maintaining professional boundaries.

---

*Footnote continued from previous page*
*Pasadena obstetrician of mistreating them. He denied all claims and was able to continue practicing*, L.A. Times (Dec. 9, 2018), . https://www.latimes.com/local/lanow/la-me-huntington-doctor-misconduct-allegations-20181209-story.html (last accessed Jan. 4, 2019).

[9] Matt Hamilton and Harriet Ryan, *Prominent obstetrician accused of sexual misconduct removed from leadership at Huntington Hospital and must have chaperone*, L.A. Times (Oct. 5, 2018), https://www.latimes.com/local/lanow/la-me-ln-huntington-hospital-doctor-investigation-20181005-story.html (last accessed Jan. 4, 2019).

39.     In the most recent accusation, in 2016, Sutton told a patient seeking treatment for a cyst "that he really could not see 'down there' because she was really hairy," according to the Board filing. After Sutton's female office assistant left the room to answer a phone call, Sutton asked the woman, "Do you have sex?" She replied, "No," adding that she had an abusive relationship and now dedicated her life to her kids. Sutton continued pressing her, according to the court papers, asking, "Do you enjoy orgasms, you are a very beautiful woman?" The patient, who was wearing a paper gown, "was intimidated and did not know how to get out of the situation."

40.     This behavior violates the applicable standard of care, and comports with Plaintiffs' descriptions of their interactions with Sutton. Sutton's sexual misconduct while at Huntington Hospital has therefore been well documented and known to Huntington and the Medical Staff for decades.

**D.     Plaintiffs' Experiences**

*Jane Doe K.G.*

41.     In 1998, Jane Doe K.G. learned that she was pregnant. She sought an Ob-Gyn, and she was delighted to find Sutton, a doctor who was on her insurance and who was associated with Huntington Memorial Hospital.  Jane Doe K.G. found the facilities beautiful and wanted to deliver her baby there.

42.     Jane Doe K.G. went to her first pregnancy appointment with her husband. Dr. Sutton reviewed the sonogram with them and confirmed the pregnancy.

43.      During her subsequent visits, however, Sutton's behavior became inappropriate. He frequently made "arousal-type" sounds while examining her, and told her that she was a beautiful woman and that her husband must love her "boobs." At almost every visit, Sutton asked about her sex life with her husband, saying that sex was good for her and the baby, and that she should not ignore her husband's desires.

44.     During Jane Doe K.G.'s visits, Sutton stroked her legs in a sexual manner.

45.      Although Jane Doe K.G. was extremely uncomfortable with Sutton's treatment of her, she was intimidated by his position of apparent authority as a physician. However, Jane Doe K.G. did tell her husband after the visits that Sutton made her uncomfortable and that she wished he would stop his mistreatment of her.

46.     On December 27, 1998, Sutton induced Jane Doe K.G.'s labor two weeks early because he was going on vacation. Jane Doe K.G. delivered her baby at Huntington Hospital.

47.     Following Jane Doe K.G.'s delivery at Huntington, she next saw Sutton at her post-partum visit some weeks later. She brought her infant to the appointment, but not her husband.

48.     During that visit, Dr. Sutton performed a vaginal exam on Jane Doe K.G., which she was not expecting at the time. There was no nurse in the room. During the exam, he commented that she was "tight" and that her husband must love it. He also made strange "arousal-type" sounds. He then barraged her with questions about how frequently she and her husband had sex and about the difference between how it felt pre- and post-partum.

49.     Sutton next groped Jane Doe K.G.'s breasts and told her that he wanted to "play with them." He added, "your husband must love to rub his penis there," "they are beautiful," and that he wished he "had a pair."

50.     The manner and amount of time that Sutton spent examining Jane Doe K.G.'s breasts was beyond what was required for medical purposes and purely to satisfy his own prurient interests.

51.     Jane Doe K.G. has thus been damaged by Sutton, the Medical Staff, and Huntington Hospital's actions.

- 10 -

_Jane Doe T.F._

52.     In May 1990, Jane Doe T.F. learned that she was pregnant with her first child. She called her insurance company and asked for a nearby Ob-Gyn, and she was referred to Dr. Sutton.

53.     At each visit, a nurse would bring Jane Doe T.F. to the exam room and ask initial questions. The nurse would then leave, and Sutton would conduct the examination alone, with no one else in the room. Given that this was her first pregnancy, she did not know that this was not normal.

54.     Over the course of Jane Doe T.F.'s visits, Sutton began to make a series of inappropriate comments which became more sexually suggestive over time. Sutton was also "touch-feely" during the exams. He asked her about her relationship with her husband, and details related to sex and orgasms. When she asked him whether sex was safe to have during pregnancy, he responded, "the more sex, the better." Sutton had a constant preoccupation with sex. He also told her that she was "quite tight down there," and referred to her breasts as "perky little things."

55.     On one occasion, Jane Doe T.F. called Sutton's office to ask if she was allowed to take medicine for her migraine headaches while pregnant. Sutton returned the call and told her that instead of taking medication for her migraine, she should masturbate in order to make the blood rush to her head, which according to him would stop the migraine. He told her to call him and let him know if she was able to achieve orgasm through masturbation. Jane Doe T.F. did not follow his suggestion, nor did she contact him again about the topic.

56.     During Jane Doe T.F.'s visits, Sutton regularly stroked her thighs in a sexual manner.

57.     On February 3, 1991, Jane Doe T.F. delivered her child at Huntington Memorial Hospital.

58.     Throughout her labor and delivery at Huntington, T.F. was treated inappropriately by Sutton and the medical staff, including a failed epidural by a

1   Hospital anesthesiologist, drastic leg contortions imposed upon her by a Hospital
2   nurse, and overall failure by the medical staff to address inappropriate treatment by
3   Sutton.

4          59.    During Jane Doe T.F.'s post-natal visit with Sutton, he examined her
5   episiotomy results and remarked that her "husband is going to love this."

6          60.    Jane Doe T.F. has thus been damaged by Sutton, the Medical Staff,
7   and Huntington Hospital's actions.

8             *Jane Doe B.S.*

9          61.    In 1991, Jane Doe B.S. learned that she was pregnant with her second
10  child.

11         62.    Because she was not receiving regular gynecological care at the time,
12  Jane Doe B.S. found Dr. Sutton on a list of obstetricians provided to her by her
13  health insurance.

14         63.    During each office visit with Sutton, a female nurse would accompany
15  Jane Doe B.S. into the room, but she would immediately leave before Sutton
16  entered. Sutton always examined Jane Doe B.S. alone, with no one else in the
17  room.

18         64.    Dr. Sutton did not wear gloves while examining Jane Doe B.S.

19         65.    Over the course of her visits, Sutton made constant inappropriate
20  comments. He told her that she had a "young, tight uterus," and that her "boyfriend
21  must love that." He continually referred to Jane Doe B.S.'s husband as her
22  boyfriend, even though she reminded him each time that he was her husband.
23  Sutton also told her that she was likely to have a C-section, which would be a
24  shame because it would scar her "beautiful body."

25         66.    On one occasion, Sutton told Jane Doe B.S. that he was going to listen
26  to her heartbeat, but proceeded to place his stethoscope on her nipple.

27         67.    Jane Doe B.S. delivered her child at Huntington Hospital.

28

68.    Jane Doe B.S. has thus been damaged by Sutton, the Medical Staff, and Huntington Hospital's actions.

*Jane Doe W.D.*

69.    In or around January of 2016, Jane Doe W.D. was eight months pregnant with her first child and desperate to find an obstetrician. Her insurance plan had changed that month, and the obstetrician she had been seeing did not accept her new plan, forcing her to change doctors very late into her pregnancy. Jane Doe W.D. found Dr. Sutton, who accepted her insurance.

70.    On Jane Doe W.D.'s first appointment with Dr. Sutton, he performed a vaginal exam on her that left her feeling violated. Dr. Sutton stuck his fingers in and out of Jane Doe W.D.'s vagina many times – she felt that it was excessive, and it was very unlike her previous doctor's practice. Because this was her first pregnancy, however, she did not know for sure.

71.    Jane Doe W.D. walked out of that first appointment feeling very uncomfortable. She immediately called her boyfriend and asked him to come to her future appointments with her. Jane Doe W.D. told her boyfriend that she felt violated.

72.    Dr. Sutton continued to touch Jane Doe W.D. inappropriately and excessively during her subsequent vaginal exams. Although Plaintiff Jane Doe W.D. was seeing Sutton specifically due to her pregnancy at this time, he insisted on performing breast exams at each appointment, which were unnecessary to treating her pregnancy and which she did not request. When he performed these breast exams, Jane Doe W.D. also felt that Dr. Sutton's approach was not normal. Dr. Sutton grabbed her breasts with more of a "groping and sensual grab," unlike the way her previous doctors had examined her during routine breast exams. This made her feel very uncomfortable and violated.

73.    On February 9, 2016, Jane Doe W.D. delivered her baby at Huntington Hospital.

74.     Dr. Sutton made Jane Doe W.D. feel so uncomfortable that after having her child, she tried to avoid going to follow-up appointments with him. She went to a post-natal checkup in or around March 2016, where he again repeated the inappropriate and excessive vaginal penetration.

75.     Jane Doe W.D.'s final visit with Dr. Sutton was in or around June 2018. Again at that appointment Dr. Sutton performed a vaginal examination of Jane Doe W.D., during which he excessively vaginally penetrated her with his fingers, "sensually" groped her breasts, and made comments about her physical appearance.

76.     Although Jane Doe W.D. has a painful gynecological condition, endometriosis, which requires regular gynecological care, she has tried to avoid seeing Dr. Sutton because of his inappropriate and violative behavior towards her. Moreover, although Jane Doe W.D. was on birth control, and would prefer to be on oral contraceptives as a convenient method to prevent unwanted pregnancies, she has discontinued taking the medication because she does not want to have to visit Dr. Sutton for another vaginal exam in order to renew her prescription. Jane Doe W.D. has also avoided going to any gynecologists as a result of these traumatic experiences.

77.     Jane Doe W.D. has thus been damaged by Sutton, the Medical Staff, and Huntington Hospital's actions.

**E.     The statute of limitations is tolled based on the continuing violations doctrine and fraudulent concealment.**

78.     Sutton concealed the existence of Plaintiffs' claims and the fact that Plaintiffs had a cause of action against Sutton, the Medical Staff, and/or Huntington Hospital at the time his sexual assaults occurred by making material representation(s) to Plaintiffs involving a past or existing fact, including by misrepresenting that his acts and/or conduct were for a legitimate medical purpose and/or conformed to accepted medical practice.

79.     When Sutton made the material representation(s), he knew that they were false in that he knew that the examinations were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or gynecology or obstetrics.

80.     Sutton made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiffs and the Class in that Plaintiffs and Class members should believe that the examinations were proper, appropriate, and legitimate; should not believe that they had been sexually assaulted so that he could prevent discovery of his sexual assaults; should continue to be seen by him so that he could continue to sexually assault them; should not question and/or report the conduct to appropriate authorities; and should not reasonably believe and not be aware of a possible cause of action that they have against Sutton, the Medical Staff, and/or Huntington Hospital.

81.     Plaintiffs and Class members acted in reliance upon the material representation(s) in that they:

        a.      Reasonably believed that the examinations were proper, appropriate, and legitimate;

        b.      Reasonably did not believe that they had been sexually assaulted;

        c.      Did not believe that they should question and/or report the conduct to appropriate authorities; and,

        d.      Did not reasonably believe that they had and were not aware of a possible cause of action that they had against Sutton, the Medical Staff, and/or Huntington Hospital.

82.     Directors, managers, supervisors, physicians, nurses, and chaperones at Huntington Hospital and the Medical Staff, took affirmative steps to fraudulently conceal Sutton's misconduct, including, but not limited to, depressing complaints

1  made by patients, and continuing to allow Sutton to treat female patients despite

2  knowledge of his misconduct.

3      83.    The actions and inactions of Sutton, the Medical Staff, and Huntington

4  Hospital constituted fraudulent concealment.

5      84.    The statute of limitations for each of Plaintiffs' causes of actions was

6  equitably tolled, and Defendants are equitably estopped from asserting the statute of

7  limitations as a defense, by reason of their wrongful conduct.

8      85.    As part of Defendants' wrongful attempt to conceal Sutton's

9  propensity to sexually abuse female patients, and his past sexual abuse, from public

10  scrutiny and criminal investigation, Defendants implemented various measures with

11  the intent and effect of making Sutton's conduct harder to detect and ensuring that

12  other patients with whom he came into contact, including Plaintiffs, would be

13  sexually abused and assaulted, including:

14      a.    Permitting Sutton to remain in a position of authority and trust

15  after Huntington Hospital and the Medical Staff knew or should have known that he

16  molested and harassed his female patients;

17      b.    Scheduling female patients for appointments with Sutton,

18  including appointments without a nurse or chaperone present, despite being aware

19  of his improper conduct;

20      c.    Granting Sutton unfettered access to and control over patients

21  even when he was purporting to provide extremely sensitive gynecological

22  treatment, thereby allowing Sutton to physically and sexually interact with female

23  patients, including Plaintiffs;

24      d.    Holding out Sutton to Plaintiffs, other Huntington patients, and

25  the public at large as a trustworthy person of good moral character who was capable

26  and worthy of being granted unsupervised access to the patients of Huntington

27  Hospital and the Medical Staff;

28

e.      Failing to disclose and actively concealing Sutton's prior record of misconduct, sexual abuse, harassment, and molestation, and his propensity to commit such acts towards patients, from its patients, the public at large, and law enforcement;

f.      Failing to investigate or otherwise confirm or deny such facts about Sutton, including prior complaints, claims, and investigations relating to sexual abuse suffered at his hands;

g.      Failing to implement reasonable safeguards to avoid acts of unlawful sexual conduct by Sutton, such as by avoiding placement of Sutton in functions or environments in which he would necessarily have intimate contact with female patients; and

h.      Failing to implement systems or procedures to supervise or monitor doctors to ensure that they did not molest or abuse patients in Defendants' care and, further, that they report all reasonable suspicions of sexual assault or battery to law enforcement as mandated by Section 11160 of the California Penal Code.

86.     At all times pertinent to this action, Sutton was an agent, apparent agent, servant, and/or employee of Huntington Hospital and the Medical Staff and operated within the scope of his actual and/or apparent agency, service, and/or employment, and his negligence is imputed to Huntington and the Medical Staff.

87.     Defendants engaged in, joined in, and conspired with each other in carrying out the tortuous and unlawful activities herein described. Each Defendant is legally responsible for the occurrences herein alleged, and Plaintiffs' damages, as herein alleged, were proximately caused by all Defendants.

88.     Plaintiffs and Class members did not know, could not have reasonably known, and were not reasonably aware of a possible cause of action that they had against Sutton, the Medical Staff, and/or Huntington until the October 2018 publication of a story about Sutton's misconduct in the Los Angeles Times.

**CLASS ACTION ALLEGATIONS**

89.     Pursuant to Federal Rule of Civil Procedure 23(b)(3) and 23(c)(4), Plaintiffs bring this action on behalf of themselves and the following class of others who are similarly situated:

> Nationwide Class:  All women who were treated by Dr. Patrick Sutton during his actual and/or apparent agency, service, and/or employment by Huntington Hospital and the Medical Staff (the "National Class").

90.     Excluded from the class are Defendants, their affiliates and subsidiaries, and their officers, directors, partners, employees, and agents; class counsel, their immediate family members, and employees of their firms; counsel for Defendants, their immediate family members, and employees of their firms; and judicial officers assigned to this case and their staffs and immediate family members.

91.     Plaintiffs reserve the right to amend or modify the above class definition with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

92.     The Class consists of hundreds, if not thousands, of women, making joinder impracticable, in satisfaction of Fed. R. Civ. P. 23(a)(1). The exact size of the Class and the identities of the individual members are ascertainable through records maintained by Sutton, Huntington, and the Medical Staff.

93.     Numerosity.  The members of the class are so numerous that their individual joinder is impracticable. Upon information and belief, there are thousands of class members, whose names and addresses are readily available from Defendants' records.

94.     Commonality. There are questions of law and fact common to the class, which predominate over any questions affecting individual members of the class.

95.     <u>Typicality.</u> Plaintiffs' claims are typical of the other Class members' claims because Plaintiffs and Class members were subjected to the same wrongful conduct and damaged in the same manner.

96.     <u>Existence and Predominance of Common Questions of Fact and Law.</u> This action involves common questions of law and fact that predominate over any questions affecting individual class members, including, without limitation:

a.     Whether Defendants owed a duty to Plaintiffs and Class members to protect their health and safety and not to violate their trust;

b.     Whether Defendants breached their duties to Plaintiffs and Class members;

c.     Whether Huntington Hospital and the Medical Staff knew of Sutton's misconduct, but continued to protect him and allow him access and opportunity to sexually abuse women;

d.     Whether Defendants are liable for gender violence, in violation of the California Civil Code, § 52.4;

e.     Whether Defendants are liable for invasion of privacy;

f.     Whether Defendants are liable for sexual harassment, in violation of California Civil Code, § 51.9;

g.     Whether Defendants are liable for sexual assault;

h.     Whether Defendants are liable for sexual battery, in violation of California Civil Code, § 1708.5;

i.     Whether Defendants are liable for negligence;

j.     Whether Defendants are liable for gross negligence and/or wanton and reckless misconduct;

k.     Whether Defendants are liable for negligent supervision;

l.     Whether Defendants are liable for negligence *per se;*

m.     Whether Defendants are liable for negligent hiring/retention;

1           n.     Whether Defendants are liable for negligent failure to warn,

2  train or educate; and

3           o.     Whether Plaintiffs and Class members suffered harm as a result

4  of Defendants' violations and, if so, the appropriate measure of damages,

5  restitution, or rescission.

6        97.    Adequacy of Representation.  Plaintiffs are adequate class

7  representatives. Their interests do not conflict with the interests of the other Class

8  members they seek to represent. Plaintiffs have retained counsel competent and

9  experienced in complex class action litigation, and they intend to prosecute this

10  action vigorously. Plaintiffs and their counsel will fairly and adequately pursue and

11  protect the interests of the class.

12        98.    Superiority.  A class action is superior to all other available means for

13  the fair and efficient adjudication of this controversy. The highly sensitive and

14  private nature of the facts involved here counsels toward providing a class vehicle

15  to adjudicate these claims. The damages or other financial detriment suffered by

16  Plaintiffs and the other class members are relatively small compared to the burden

17  and expense that would be required to individually litigate these claims. As a result,

18  it would be impracticable for class members to seek redress individually.

19  Individualized litigation would also create a potential for inconsistent or

20  contradictory judgments and increase the delay and expense to all parties and the

21  court system. By contrast, the class action device presents far fewer management

22  difficulties and provides the benefits of single adjudication, economy of scale, and

23  comprehensive supervision by a single court.

24        99.    Particular Issues.  The claims of Plaintiffs and Class members involve

25  common issues that may be adjudicated on a classwide basis pursuant to Rule

26  23(c)(4).

27

28

**FIRST CLAIM FOR RELIEF**
**GENDER VIOLENCE, Cal. Civ. Code § 52.4**
**(Against Defendants Sutton, the Medical Staff, and Huntington Hospital)**

100. Plaintiffs restate and incorporate herein by reference the preceding paragraphs as if fully set forth herein.

101. California Civil Code § 52.4 declares, in pertinent part, that any person subjected to gender violence may bring a civil action for damages against any responsible party, and may seek actual, compensatory, and punitive damages therefor, or any other appropriate relief.

102. For purposes of Cal. Civ. Code § 52.4, gender violence is a form of sex discrimination and means any of the following:

a. An act that would constitute a criminal offense under state law that has as an element the use, attempted use or threatened use of physical force against the person of another, committed at least in part based on the gender of the victim, whether or not the act has resulted in a criminal complaint, charge, prosecution, or conviction.

b. A physical intrusion or physical invasion of a sexual nature under coercive conditions, whether or not the act has resulted in a criminal complaint, charge, prosecution, or conviction.

103. Upon information and belief, Sutton intentionally and without consent of Plaintiffs or Class members, made unpermitted, harmful, and offensive sexual and/or other physical intrusion, invasion, or contact with Plaintiffs and Class members in violation of Cal. Civ. Code § 52.4. At all relevant times, Defendant Sutton acted as a duly authorized agent, servant, and/or employee of Huntington Hospital and the Medical Staff.

104. Defendant Sutton carried out such actions and conduct as an employee, agent, and/or representative of Huntington and the Medical Staff, which provide medical treatment to the public.

105.   Defendants Huntington Hospital and the Medical Staff are liable and vicariously liable for Defendant Sutton's conduct.

106.   As a result of the conduct of the Defendants, Plaintiffs and the Class members sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, and damages (both economic and noneconomic), in the past, present and future, for which this claim is made. The injuries suffered by Plaintiffs and the Class members are substantial, continuing, and permanent.

107.   Defendants' conduct as described herein was despicable and was committed maliciously, fraudulently, and/or oppressively with the wrongful intention of injuring Plaintiffs and the Class members and with a willful and conscious disregard of their rights, justifying an award of punitive damages.

108.   As a proximate result of Sutton's acts, Plaintiffs and the Class members are entitled to actual damages, compensatory damages, punitive damages, injunctive relief, any combination of those, or any other appropriate relief. Plaintiffs and the Class members are also entitled to an award of attorney's fees and costs pursuant to Cal. Civ. Code § 52.4.

**SECOND CLAIM FOR RELIEF**
**SEXUAL HARASSMENT, Cal. Civ. Code § 51.9**
**(Against Defendants Sutton, the Medical Staff, and Huntington)**

109.   Plaintiffs restate and incorporate herein by reference the preceding paragraphs as if fully set forth herein.

110.   During Plaintiffs and the Class members' time as patients in the care of Defendants Sutton, Huntington, and the Medical Staff, Sutton intentionally, recklessly, and wantonly made sexual advances, solicitations, requests, demands for sexual compliance of a hostile nature based on Plaintiffs and the Class members' gender that were unwelcome, pervasive, and severe, including but not limited to Sutton groping and fondling Plaintiffs' and the Class members' breasts and vaginas,

1  and making lewd and inappropriate comments and propositions of a sexual nature,

2  all under the supervision of Defendants Huntington Hospital and the Medical Staff,

3  and acting in the course and scope of his agency, representation, and/or

4  employment with Defendants Huntington Hospital and the Medical Staff.

5         111.   The incidents of abuse and harassment outlined herein above took

6  place while Plaintiffs and Class members were under the control of Sutton, the

7  Medical Staff, and Huntington, in their capacity and position as supervisors of their

8  own physicians, medical professionals, and staff.

9         112.   During Plaintiffs' and the Class members' time as patients in the care

10  of Defendants Sutton, Huntington, and the Medical Staff, Sutton intentionally,

11  recklessly, and wantonly did acts which resulted in harmful and offensive contact

12  with intimate parts of their persons, including but not limited to, using his position

13  of authority and trust to force Plaintiffs and Class members to endure Sutton's

14  inappropriate sexual touching and comments.

15         113.   Because of Plaintiffs' and the Class members' patient relationships

16  with Sutton, the Medical Staff, and Huntington, Plaintiffs and the Class members

17  were unable to easily terminate the relationship they had with Defendant Sutton.

18         114.   Because of Sutton's position of authority and trust, physical seclusion

19  of Plaintiffs and the Class members, and Plaintiffs' and Class members' mental and

20  emotional states, Plaintiffs and Class members were unable to, and did not and

21  could not, give consent to such acts.

22         115.   Even though Defendants Huntington Hospital and the Medical Staff

23  knew or should have known of these activities by Sutton, they did nothing to

24  investigate, supervise, or monitor Sutton to ensure the safety of the patients in their

25  care.

26         116.   Because of Plaintiffs' and Class members' patient relationships with

27  Defendants, Plaintiffs and Class members were unable to easily terminate the

28  doctor-patient relationships they had with Defendants.

117.   A corporation is a "person" within meaning of Cal. Civ. Code § 51.9, which subjects persons to liability for sexual harassment within a business, service, or professional relationship, and such an entity defendant may be held liable under this statute for the acts of its employees. Further, principles of ratification apply when the principal ratifies the agent's originally unauthorized harassment, as is alleged to have occurred herein.

118.   Defendants' conduct (and the conduct of their agents) was a breach of their duties to Plaintiffs and Class members.

119.   As a result of the above-described conduct, Plaintiffs and Class members suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

### THIRD CLAIM FOR RELIEF
### SEXUAL ASSAULT
### (Against Defendant Sutton)

120.   Plaintiffs restate and incorporate herein by reference the preceding paragraphs as if fully set forth herein.

121.   Defendant Sutton, in doing the things herein alleged, including intending to subject Plaintiffs and Class members to numerous instances of sexual abuse and molestation during their time in the care of Defendants Sutton, the Medical Staff, and Huntington, beginning in or around 1989, and lasting for the duration of Plaintiffs' and Class members' time as patients in Defendants' care, through or around October 2018, were intended to cause harmful or offensive

1  contact with Plaintiffs and Class members' persons, or intended to put Plaintiffs

2  and Class members in imminent apprehension of such contact.

3    122. In doing the things herein alleged, Defendants put Plaintiffs and Class

4  members in imminent apprehension of a harmful or offensive contact by Sutton and

5  actually believed that Sutton had the ability to make harmful or offensive contact

6  with Plaintiffs' and Class members' persons.

7    123. Plaintiffs and the Class members did not consent to Sutton's intended

8  harmful or offensive contact with Plaintiffs and Class members' persons, or intent

9  to put Plaintiffs and Class members in imminent apprehension of such contact.

10    124. In doing the things herein alleged, Sutton violated Plaintiffs' and Class

11  members' rights, pursuant to Cal. Civ. Code § 43, of protection from bodily

12  restraint or harm, and from personal insult.

13    125. In doing the things herein alleged, Sutton violated his duty, pursuant to

14  Cal. Civ. Code § 1708, to abstain from injuring the person of Plaintiffs and Class

15  members or infringing upon their rights.

16    126. As a result of the above-described conduct, Plaintiffs and Class

17  members have suffered and continue to suffer great pain of mind and body, shock,

18  emotional distress, physical manifestations of emotional distress including

19  embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment

20  of life; have suffered and continue to suffer and was prevented and will continue to

21  be prevented from performing daily activities and obtaining the full enjoyment of

22  life; and/or have incurred and will continue to incur expenses for medical and

23  psychological treatment, therapy, and counseling.

24    127. Plaintiffs and Class members are informed and based thereon allege

25  that the conduct of Defendants was oppressive, malicious, and despicable in that it

26  was intentional and done in conscious disregard for the rights and safety of others,

27  and were carried out with a conscious disregard of their right to be free from such

28  tortious behavior, such as to constitute oppression, fraud, or malice pursuant to Cal.

Civ. Code § 3294, entitling Plaintiffs and Class members to punitive damages against Defendants in an amount appropriate to punish and set an example of Defendants.

### FOURTH CLAIM FOR RELIEF
### SEXUAL BATTERY, Cal. Civ. Code § 1708.5
### (Against Defendant Sutton)

128.   Plaintiffs restate and incorporate herein by reference the preceding paragraphs as if fully set forth herein.

129.   During Plaintiffs' and Class members' time as patients in the care of Defendants Sutton, the Medical Staff, and Huntington, Sutton intentionally, recklessly, and wantonly did acts which were intended to, and did result in harmful and offensive contact with intimate parts of Plaintiffs and Class members' persons, including but not limited to being subjected to numerous instances of sexual harassment and abuse by Sutton, beginning in or around 1989, and lasting for the duration of Plaintiffs and Class members' time as patients in Defendants' care, all while Sutton acted in the course and scope of his actual and/or apparent agency and/or employment with Huntington Hospital and the Medical Staff.

130.   Sutton performed the aforementioned acts with the intent to cause a harmful or offensive contact with intimate parts of Plaintiffs and Class members' bodies, which would offend a reasonable sense of personal dignity. Further, said acts did cause a harmful or offensive contact with intimate parts of Plaintiffs' and Class members' persons that would offend a reasonable sense of personal dignity.

131.   Defendant Sutton carried out such actions and conduct as an employee, agent, and/or representative of Huntington and the Medical Staff, which provide medical treatment to the public.

132.   Because of Sutton's position of authority and trust as a physician, and their mental and emotional state as his patients, Plaintiffs and Class members did not give meaningful consent to such acts.

133.   As a direct, legal, and proximate result of the acts of Sutton, the Medical Staff, and Huntington, Plaintiffs and Class members sustained serious and permanent injuries to their persons, all of this damage in an amount to be shown according to proof and within the jurisdiction of the Court.

134.   As a direct result of the sexual abuse by Sutton, Plaintiffs and Class members have difficulty in reasonably or meaningfully interacting with others, including those in positions of authority over them such as doctors, and in intimate, confidential, and familial relationships, due to the trauma of the sexual abuse inflicted upon them by Defendants Sutton, the Medical Staff, and Huntington. This inability to interact creates conflict with Plaintiffs and Class members' values of trust and confidence in others, and has caused Plaintiffs and Class members substantial emotional distress, anxiety, nervousness, and fear. As a direct result of the sexual abuse and molestation by Sutton, Plaintiffs and Class members suffered immensely, including, but not limited to, encountering issues with a lack of trust, various psychological sequelae, depressive symptoms, anxiety, nervousness, and self-medicating behavior.

135.   Upon information and belief, the conduct of Sutton was oppressive, malicious, and despicable in that it was intentional and done in conscious disregard for the rights and safety of others, and was carried out with a conscious disregard of Plaintiffs' and Class members' right to be free from such tortious behavior, such as to constitute oppression, fraud, or malice pursuant to Cal. Civ. Code § 3294, entitling Plaintiffs and Class members to punitive damages against Sutton in an amount appropriate to punish and set an example of Sutton.

## FIFTH CLAIM FOR RELIEF
### NEGLIGENCE
**(Against Defendants Huntington Hospital and the Medical Staff)**

136.   Plaintiffs restate and incorporate herein by reference the preceding paragraphs as if fully set forth herein.

137.   From approximately 1989 through 2018, Sutton was an actual and/or apparent, duly authorized agent, servant, and/or employee of Huntington Hospital and the Medical Staff, providing medical treatment and services through the Huntington system. Defendants Huntington Hospital and the Medical Staff knew and/or should have known that Sutton had and was capable of sexually, physically, and mentally abusing and harassing Plaintiffs or other victims.

138.   Defendants Huntington Hospital and the Medical Staff had special duties to protect the Plaintiffs and Class members, when such individuals were patients entrusted to Defendants' care. Plaintiffs and Class members' care and health were entrusted to Defendants. Defendants Huntington Hospital and the Medical Staff voluntarily accepted the entrusted care of Plaintiffs and Class members. As such, Defendants Huntington Hospital and the Medical Staff owed Plaintiffs and Class members a special duty of care that medical professionals dealing with vulnerable medical patients owe to protect them from harm. The duty to protect and warn arose from the special, trusting, confidential, and fiduciary relationship between Defendants Huntington Hospital and the Medical Staff  on the one hand and Plaintiffs and Class members on the other hand.

139.   Defendants Huntington and the Medical Staff breached their duty of care to Plaintiffs and Class members by allowing Sutton to come into contact with Plaintiffs and Class members without effective supervision; by failing to adequately hire, supervise, and retain Sutton, whom they permitted and enabled to have access to Plaintiffs and Class members; by concealing from Plaintiffs and Class members, the public, and law enforcement that Sutton was sexually harassing, molesting, and abusing patients; by holding Sutton out to Plaintiffs and Class members as being of high moral and ethical repute, in good standing and trustworthy; and by failing to report Sutton's misconduct to the California Medical Board.

140.   Defendants Huntington Hospital and the Medical Staff further breached their duties to Plaintiffs and Class members by failing to investigate or

1   otherwise confirm or deny such facts of sexual abuse by Sutton, failing to reveal

2   such facts to Plaintiffs and Class members, the community and law enforcement

3   agencies, and by placing Sutton into a position of trust and authority, holding him

4   out to Plaintiffs, Class members, and the public as being in good standing and

5   trustworthy.

6       141.   Defendants Huntington Hospital and the Medical Staff breached their

7   duties to Plaintiffs and Class members by failing to adequately monitor and

8   supervise Defendant Sutton and failing to prevent Defendant Sutton from

9   committing wrongful sexual acts with medical patients, including Plaintiffs and

10  Class members. Defendants Huntington and Medical Staff's past records of sexual

11  misconduct by Sutton caused Defendants Huntington Hospital and its Medical Staff

12  to know, or gave them information where they should have known, of Sutton's

13  incapacity to serve as a physician – especially an obstetrician/gynecologist –

14  providing for the safe care of female patients.

15      142.   As a direct, proximate, and foreseeable result of the above-described

16  conduct, Plaintiffs and Class members have suffered and continue to suffer great

17  pain of mind and body, shock, emotional distress, physical manifestations of

18  emotional distress including embarrassment, loss of self-esteem, disgrace,

19  humiliations, and loss of enjoyment of life; has suffered and continues to suffer and

20  was prevented and will continue to be prevented from performing daily activities

21  and obtaining the full enjoyment of life; may sustain loss of earnings and earning

22  capacity; and may incur expenses for medical and psychological treatment, therapy,

23  and counseling.

24

25

26

27

28

**SIXTH CLAIM FOR RELIEF**
**GROSS NEGLIGENCE AND/OR WANTON AND RECKLESS**
**MISCONDUCT**
**(Against Defendants Sutton, the Medical Staff, and Huntington Hospital)**

143.   Plaintiffs restate and incorporate herein by reference the preceding paragraphs as if fully set forth herein, and to the extent necessary, plead this claim for relief in the alternative.

144.   Huntington Hospital and the Medical Staff owed Plaintiffs and Class members a duty to use due care to ensure their safety and freedom from sexual assault, harassment, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Defendant Sutton.

145.   Defendant Sutton owed Plaintiffs and Class members a duty of due care in carrying out his duties in a reasonable safe manner as an employee, agent, and/or representative of Huntington Hospital and the Medical Staff.

146.   By seeking medical treatment from Defendant Sutton in the course of his employment, agency, and/or representation of Huntington Hospital and the Medical Staff, a special, confidential, and fiduciary relationship between Plaintiffs and Class members and Defendant Sutton was created, resulting in Defendant Sutton owing Plaintiffs and Class members a duty to use due care.

147.   Huntington Hospital and the Medical Staff's failure to adequately supervise Defendant Sutton – especially once they knew or should have known of complaints regarding his nonconsensual sexual touching, harassment, boundary violations, and assaults during his treatment of patients – was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and Class members.

148.   Defendant Sutton's conduct in sexually assaulting, harassing, abusing, and violating Plaintiffs and Class members in the course of his employment, agency, and/or representation of Huntington and the Medical Staff and under the

guise of rendering medical care was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and Class members.

149.   Huntington Hospital and the Medical Staff's conduct demonstrated a willful disregard for precautions to ensure Plaintiffs and Class members' safety.

150.   Huntington Hospital and the Medical Staff's conduct demonstrated a willful disregard for Plaintiffs and Class members' rights.

151.   Huntington Hospital and the Medical Staff breached duties owed to Plaintiffs and Class members and were grossly negligent when they conducted themselves by the actions described above, said acts having been committed with reckless disregard for Plaintiffs and Class members' health, safety, Constitutional, and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

152.   As a result of Defendants' conduct, Plaintiffs and Class members sustained severe emotional distress and physical pain, emotional anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, and damages (both economic and noneconomic), in the past, present and future, for which this claim is made. The injuries suffered by Plaintiffs and Class members are substantial, continuing, and permanent.

153.   Defendants' conduct as described herein was grossly negligent and/or wanton and reckless because it was despicable and was committed maliciously, fraudulently, and/or oppressively with the wrongful intention of injuring Plaintiffs and Class members and with a willful and conscious disregard of Plaintiffs and Class members' rights, justifying an award of punitive damages.

### SEVENTH CLAIM FOR RELIEF
### NEGLIGENT SUPERVISION
### (Against Defendants Huntington Hospital and the Medical Staff)

154.   Plaintiffs restate and incorporate herein by reference the preceding paragraphs as if fully set forth herein.

155.   By virtue of Plaintiffs and Class members' special relationship with Defendants Huntington and the Medical Staff, and Huntington and the Medical Staff's relationship with Defendant Sutton, Defendants Huntington Hospital and the Medical Staff owed Plaintiffs and Class members a duty to provide reasonable supervision of Sutton, to use reasonable care in investigating Sutton's background, and to provide adequate warning to Plaintiffs and Class members of Sutton's dangerous propensities and unfitness. As organizations responsible for, and entrusted with, the welfare of patients, Huntington and the Medical Staff had a duty to both protect the Plaintiffs and Class members from being preyed upon by sexual predators, and to supervise and monitor Sutton such that he would not be placed in seclusion with vulnerable medical patients, including the Plaintiffs and Class members.

156.   Huntington and the Medical Staff expressly and implicitly represented that their physicians, faculty, and staff, including Sutton, were not a sexual threat to those individuals and others who would fall under Sutton's influence, control, direction, and care.

157.   Defendants Huntington Hospital and the Medical Staff, by and through their respective agents, servants, and employees, knew or should have known of Sutton's dangerous and exploitive propensities and that Sutton was an unfit agent and physician. Despite such knowledge, Defendants Huntington Hospital and the Medical Staff negligently failed to supervise Sutton in his position of trust and authority as a physician and authority figure over patients, such that he was able to commit wrongful acts of sexual misconduct against Plaintiffs and Class members. Defendants Huntington Hospital and the Medical Staff failed to provide reasonable supervision of Sutton, failed to use reasonable care in investigating Sutton, and failed to provide adequate warning to Plaintiffs of Sutton's dangerous propensities and unfitness. Defendants Huntington Hospital and the Medical Staff further failed

1   to take reasonable steps to ensure the safety of patients, including Plaintiffs and

2   Class members, from sexual harassment, molestation, and abuse.

3       158.   At no time during the periods of time alleged herein did Defendants

4   Huntington Hospital and the Medical Staff have in place a reasonable system or

5   procedure to investigate, supervise physicians or staff, including Sutton, to prevent

6   sexual harassment, molestation, and abuse of those individuals, nor did they

7   implement an effective system or procedure to oversee or monitor conduct toward

8   patients and others in Defendants Huntington Hospital and the Medical Staff's care.

9       159.   Defendants Huntington Hospital and the Medical Staff were aware or

10  should have been aware of how vulnerable medical patients – especially ob/gyn

11  patients – were to sexual harassment, molestation, and abuse by physicians and

12  other persons of authority within Huntington Hospital.

13      160.   Defendants Huntington Hospital and the Medical Staff were put on

14  notice, knew, and/or should have known that Sutton had previously engaged and

15  was continuing to engage in unlawful sexual conduct with patients and had

16  committed other felonies, for his own personal sexual gratification, and that it was

17  foreseeable that he was engaging, or would engage in illicit sexual activities with or

18  make entirely inappropriate sexual statements to Plaintiffs and Class members, and

19  others, under the cloak of the authority, confidence, and trust, bestowed upon him

20  by Defendants Huntington Hospital and the Medical Staff.

21      161.   Defendants Huntington Hospital and the Medical Staff were placed on

22  actual or constructive notice that Sutton had molested and made entirely

23  inappropriate sexual statements to other patients during his actual and/or apparent

24  agency, service, and/or employment with Defendants Huntington Hospital and the

25  Medical Staff. However, Defendants Huntington Hospital and the Medical Staff did

26  not reasonably investigate, supervise, or monitor Sutton to ensure the safety of

27  patients.

28

162.   Defendants Huntington Hospital and the Medical Staff's conduct was a breach of their duties to Plaintiffs and Class members.

163.   Defendants Huntington Hospital and the Medical Staff breached their duty to Plaintiffs by, *inter alia,* failing to adequately monitor and supervise Sutton and prevent and stop Sutton from committing wrongful sexual acts with or making entirely inappropriate sexual statements to patients, including Plaintiffs and Class members.

164.   As a result of the above-described conduct, Plaintiffs and Class members have suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; may sustain loss of earnings and earning capacity, and/or may incur expenses for medical and psychological treatment, therapy, and counseling.

**EIGHTH CLAIM FOR RELIEF**
**NEGLIGENT HIRING/RETENTION**
**(Against Defendants Huntington Hospital and the Medical Staff)**

165.   Plaintiffs restate and incorporate herein by reference the preceding paragraphs as if fully set forth herein.

166.   By virtue of Plaintiffs' and Class members' special relationship with Defendants, and Huntington and the Medical Staff's relation to Sutton, Defendants Huntington Hospital and the Medical Staff owed Plaintiffs and Class members a duty to not hire or retain Sutton, given his dangerous and exploitive propensities, which Defendants Huntington Hospital and the Medical Staff knew or should have known about had they engaged in a reasonable, meaningful, and adequate investigation of his background prior to hiring or retaining him in subsequent positions of agency, representation, and/or employment.

167.   Defendants Huntington Hospital and the Medical Staff expressly and implicitly represented that the physicians, including Defendant Sutton, were not a sexual threat to patients and others who would fall under Defendant Sutton's influence, control, direction, and guidance.

168.   At no time during the periods of time alleged did Defendants Huntington Hospital and/or the Medical Staff have in place a reasonable system or procedure to investigate, supervise, and monitor its physicians and healthcare professionals, including Sutton, to prevent pre-sexual grooming or sexual harassment, molestation, and abuse of patients nor did they implement an effective system or procedure to oversee or monitor conduct toward patients and/or others in Defendants Huntington Hospital and the Medical Staff's care.

169.   Defendants Huntington Hospital and the Medical Staff were aware or should have been aware and understand how vulnerable female patients were to sexual harassment, molestation, and abuse by physicians and other persons of authority within the control of Defendants Huntington Hospital and the Medical Staff prior to Plaintiffs' and Class members' sexual abuse by Sutton.

170.   Defendants Huntington Hospital and the Medical Staff were put on notice, and should have known, that Sutton had previously engaged and continued to engage in unlawful sexual conduct with patients, and was committing other felonies, for his own sexual gratification, and that it was, or should have known it would have been, foreseeable that he was engaging, or would engage in illicit sexual activities with or making entirely inappropriate sexual statements to Plaintiffs and Class members, under the cloak of his authority, confidence, and trust, bestowed upon him through Defendants Huntington Hospital and the Medical Staff.

171.   Even though Defendants Huntington Hospital and the Medical Staff knew or should have known of these sexually illicit activities and statements by Sutton, Defendants Huntington Hospital and the Medical Staff failed to use

reasonable care in investigating Defendant Sutton and did nothing to reasonably investigate, supervise, or monitor Sutton to ensure the safety of their patients.

172.   Defendants Huntington Hospital and the Medical Staff's conduct was a breach of their duties to Plaintiffs and Class members.

173.   As a result of the above-described conduct, Plaintiffs and Class members suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; have suffered and continues to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

174.   Defendants Huntington Hospital and the Medical Staff owed Plaintiffs and Class members a duty to take reasonable protective measures to protect Plaintiffs and Class members and other patients from the risk of sexual harassment, molestation, and abuse by Defendant Sutton by properly warning, training, or educating Plaintiffs and Class members and others about how to avoid such a risk.

175.   Defendants Huntington Hospital and the Medical Staff breached their duty to take reasonable protective measures to protect Plaintiffs and other patients from the risk of sexual harassment, molestation, and abuse by Defendant Sutton, such as the failure to properly warn, train or educate Plaintiffs and Class members about how to avoid such a particular risk that Sutton posed—of sexual misconduct.

176.   Defendants Huntington Hospital and the Medical Staff breached their duty to take reasonable protective measures to protect Plaintiffs and Class members from the risk of sexual harassment, molestation, and abuse by Defendant Sutton, by failing to supervise and stop their actual and/or apparent agents, representatives,

and/or employees, including Sutton, from committing wrongful sexual acts with patients, including Plaintiffs and Class members.

177.   As a result of the above-described conduct, Plaintiffs and Class members suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

### NINTH CLAIM FOR RELIEF
### NEGLIGENT FAILURE TO WARN, TRAIN, or EDUCATE
### (Against Defendants Huntington Hospital and the Medical Staff)

178.   Plaintiffs restate and incorporate herein by reference the preceding paragraphs as if fully set forth herein.

179.   Defendants Huntington Hospital and the Medical Staff owed Plaintiffs and Class members a duty to take reasonable protective measures to protect them and other patients from the risk of sexual harassment, molestation, and abuse by Defendant Sutton by properly warning, training, or educating Plaintiffs and Class members and others about how to avoid such a risk.

180.   Defendants Huntington Hospital and the Medical Staff breached their duty to take reasonable protective measures to protect Plaintiffs, Class members and other patients from the risk of sexual harassment, molestation, and abuse by Defendant Sutton, such as the failure to properly warn, train, or educate Plaintiffs and Class members and other patients about how to avoid such a particular risk that Sutton posed—of sexual misconduct.

181.   Defendants Huntington Hospital and the Medical Staff breached their duty to take reasonable protective measures to protect Plaintiffs, Class members, and other patients from the risk of sexual harassment, molestation, and abuse by Defendant Sutton, by failing to supervise and stop their agents, representatives, and/or employees, including Sutton, from committing wrongful sexual acts with patients, including Plaintiffs and Class members.

182.   As a result of the above-described conduct, Plaintiffs and Class members have suffered and continue to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class defined above, respectfully requests that the Court:

A.     Certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiffs as class representatives, and appoint the undersigned counsel as class counsel;

B.     Award Plaintiffs and Class members compensatory, restitutionary, rescissory, general, consequential, punitive, and/or exemplary damages in an amount to be determined at trial;

C.     Award pre-judgment interest as permitted by law;

D.     Enter appropriate equitable relief;

E.     Award reasonable attorneys' fees and costs, as provided for by law; and

F.     Grant such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: January 24, 2019

_[signature]_

Annika K. Martin (admitted *pro hac vice*)
Jonathan D. Selbin (State Bar No. 170222)
Valerie D. Comenencia Ortiz (State Bar No. 322379)
akmartin@lchb.com
jselbin@lchb.com
vcomenenciaortiz@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000

Joseph G. Sauder (*pro hac vice* pending)
Matthew D. Schelkopf
Lori G. Kier
jgs@sstriallawyers.com
mds@sstriallawyers.com
lgk@sstriallawyers.com
SAUDER SCHELKOPF LLC
555 Lancaster Avenue
Berwyn, Pennsylvania 19312
Telephone:  888.711.9975
Facsimile:  610-421-1326

Marc L. Godino (Bar No. 182689)
mgodino@glancylaw.com
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  310-201-9150
Facsimile:   310-201-9160

*Counsel for Plaintiffs and the Putative Class*

**CERTIFICATE OF SERVICE**

  I, Annika K. Martin, hereby certify that on this 24th day of January, 2019, I electronically filed SECOND AMENDED CLASS ACTION COMPLAINT with the Clerk of the United States District Court for the Central District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

  I declare under penalty of perjury that the foregoing is true and correct. Executed in New York, New York on January 24, 2019.

_____
Annika K. Martin