N. DENISE TAYLOR - State Bar No. 101434
CHERIE L. LIEURANCE - State Bar No. 119979
TAYLOR DEMARCO LLP
1000 Wilshire Boulevard, Suite 600
Los Angeles, CA 90017-2463
Telephone: (213) 687-1600
Facsimile: (213) 687-1620
dtaylor@taylordemarco.com
clieurance@taylordemarco.com

Attorneys for Defendant,
PASADENA HOSPITAL ASSOCIATION, LTD, doing
business as HUNTINGTON MEMORIAL HOSPITAL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE K.G., JANE DOE T.F., JANE DOE B.S., and JANE DOE W.D., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PASADENA HOSPITAL ASSOCIATION, LTD., d/b/a/ HUNTINGTON MEMORIAL HOSPITAL, THE MEDICAL STAFF OF HUNTINGTON MEMORIAL HOSPITAL, and PATRICK SUTTON, M.D.;<br><br>Defendants. | CASE NO.: 2:18-cv-08710-ODW (MAAx)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Date:  July 8, 2019<br>Time:  1:30 p.m.<br>Crtrm: 5D<br><br><br>Action Filed:  10/10/2018<br>Trial Date:      None |

TO THE ABOVE-ENTITLED COURT AND TO PLAINTIFFS, THROUGH THEIR ATTORNEYS OF RECORD:

Defendant, Pasadena Hospital Association, Ltd., doing business as Huntington Memorial Hospital ("Huntington Memorial"), submits the following Reply Memorandum of Points and Authorities in support of its to strike the following portions of plaintiffs' Second Amended Complaint:

1

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE PLAINTIFFS' SECOND AMENDED COMPLAINT**

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE

## I.

## FROM THE FACE OF PLAINTIFFS' SECOND AMENDED COMPLAINT, AND WITHOUT THE NECESSITY OF DISCOVERY, PLAINTIFFS' PROPOSED CLASS ACTION CANNOT BE MAINTAINED

**A. Certification Is Appropriate Only Where the Plaintiffs' Claims Rest on Common Questions Which Will Resolve an Issue Central to Each of Their Claims in One Stroke – The Common Questions Must Predominate over Individual Questions.**

A court may grant a motion to strike class allegations if it is clear from the complaint that the class claims cannot be maintained. *Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009); *Romero v. Securus Techs., Inc.*, 216 F. Supp.3d 1078, 1095 (S.D.Cal. 2016). That that is the case here.

Rule 23(a)'s four requirements--numerosity, commonality, typicality, and adequate representation--effectively limit the class claims to those fairly encompassed by the named plaintiff 's claims. *Dukes*, at 349. The burden of demonstrating that the elements of Rule 23(a) are satisfied is on the party who will be seeking certification. *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1308 (9th Cir. 1977). A class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 348 (2011). To justify a departure from that rule, a class representative must possess the same interest and suffer the same injury as the class members. *Id.*, at 348-349.

Class certification also requires the questions of law or fact common to class members predominate over any questions affecting only individual members. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013). The predominance inquiry requires the Court to make a global determination of whether common

questions prevail over individualized ones. *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016).

> "An individual question is one 'where members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where '*the same evidence will suffice* for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods v. Bouaphakeo*, 577 U.S. __; 136 S. Ct. 1036, 1045 (2016); *Ruiz, supra,* at 1134.

Plaintiffs' proposed class is not limited to persons who were allegedly subjected to misconduct or harmed. It includes "[a]ll women who were treated by Dr. Sutton during his actual or apparent agency, service, and/or employment by Huntington [Memorial] and the [Medical Staff]." (SAC, ¶ 89.) Plaintiffs have not alleged facts showing that all, a majority or even a significant number of persons treated by Dr. Sutton were subjected to sexual abuse or harassment and were harmed thereby.

The Ninth Circuit has held that where a proposed class, such as that proposed by plaintiffs here, is so broad as to make it unreasonable to assume that all class members were injured, the proposed class is overly broad. *Mazza v. Am. Honda Motor Co.,* 666 F.2d 581, 596 (9th Cir. 2012) (finding a proposed class in a false advertising case to be overly broad, where the limited scope of that advertising made it unreasonable to assume that all class members viewed the advertising in issue and were injured in reliance thereon); see also *Kaplan v. Porsche Fin. Srvcs.*, 2018 U.S.Dist. LEXIS 103446, *5 (C.D.Cal. 2018) (finding serious concerns about the presence of federal jurisdiction over a matter under the CAFA, where plaintiff's class definition potentially sweeps in thousands of individuals who may not have standing to bring the claims asserted).

Plaintiffs' reliance on a Seventh Circuit decision, *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014), is misplaced. That action involved a claim that a manufacturer ("GSC") of an instant coffee machine was misleading as to the nature of its product in its package representations by failing to mention the machine used instant coffee. *Id.*, at 753-754. Plaintiffs sought to certify a class of GSC purchasers. *Id.*, at

3

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE PLAINTIFFS' SECOND AMENDED COMPLAINT**

754-755. In finding the District Court had erred in: **(1)** failing to recognize the question common to the claims of all putative class members – whether the GSC packaging was likely to mislead a reasonable consumer; and **(2)** applying a too strict a test when it considered whether common questions predominate over individual questions. Id., at 755, the *Suchanek* court recognized that:

> "[w]hat matters to class certification ... [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." [Citation.] The critical point is "the need for conduct common to members of the class. [Citations.] ***Where the defendant's allegedly injurious conduct differs from plaintiff to plaintiff***, as it did among Wal-Mart's 2,000 stores, ***no common answers are likely to be found***. That is why the Court there held that plaintiffs could not proceed with a class action without a showing that Wal-Mart had adopted a company-wide discriminatory policy." *Suchanek, supra.* 764 F.3d at 756 (emphasis added).

> "It is apparent that this is not a case where few, if any, of the putative class members share the named representative's grievance against the defendant. If it were, things would be different. ***A person whose claim is idiosyncratic or possibly unique is an unsuitable class representative***." *Suchanek, supra.* 764 F.3d at 758 (emphasis added).

The present case is a far cry from *Suchanek*, where "[t]he question whether the GSC packaging was likely to mislead a reasonable consumer is common to the claims of every class member." *Suchanek, supra*, 764 F.3d at 758. Plaintiffs admit in their opposition that commonality requires the plaintiff to demonstrate that the class members have suffered harm ***by the same conduct***. Pltf's Opp., p. 7:13-17, citing *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167-1169 (9th Cir. 2014). This requires more than a mere showing that the proposed class members have "all suffered a violation of the same provision of law." *Id.* Certification is appropriate only where the plaintiffs' claims rest on a "common contention" whose "truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Parsons v. Ryan*, 754 F.3d 657, 681 (9th Cir. 2014).

///

///

///

**B. Plaintiffs' Second Amended Complaint, on its Face, Shows Common Questions as to Dr. Sutton's Misconduct Do Not Predominate over Individual Questions – No Discovery Is Necessary to Make This Determination.**

As is demonstrated by the allegations of each representative plaintiff, the conduct to which each plaintiff was subjected by Dr. Sutton was not the same. Although a couple of plaintiffs allege they were exposed to similar boorish conduct by Dr. Sutton, even that conduct occurred at different times and each plaintiff's claims are based on additional conduct which was not necessarily experienced by any other plaintiffs. See SAC, ¶¶ 41-76. The conduct to which each plaintiff was subjected will need to be evaluated cumulatively to determine whether it was sufficient to give rise to a claim for gender violence[1] or sexual harassment which was "unwelcome and pervasive or severe."[2] The resolution of those questions as to any plaintiff will not resolve a common question as to any other plaintiff. To the contrary, the resolution of whether Dr. Sutton abused or harassed any one plaintiff will be inadmissible to prove he harassed or abused any other plaintiff on any other occasion or to prove he has any propensity to engage in such conduct. Federal Rules of Evidence, Rule 404(a)(1); *Cohn v. Papke*, 655 F.2d 191, 193-194 (9th Cir. 1981).

Further evidencing the empirical overbreadth and lack of commonality and typicality, the law has not been the same at all times encompassed by plaintiffs' claims and the class allegations. At the time plaintiffs saw Dr. Sutton--Jane Doe K.G. (KG) in 1998-1999, Jane Doe T.F. (TF) in 1990 and Jane Doe B.S. (BS) in 1991, Cal. Civil

---

[1] Gender violence involves a criminal offense based on the gender of the victim that has as an element the use, attempted use, or threatened use of physical force against the victim or a physical intrusion or physical invasion of a sexual nature under coercive conditions, Cal. Civil Code § 52.4(c).

[2] Although the sexual harassment statute, Cal. Civil. Code § 51.9, has been amended since its enactment in 1994, to extend liability to additional forms of harassing conduct, liability always required the harassment be either "unwelcome and persistent or severe," see Stats 1994 Cal SB 612, or "unwelcome and pervasive or severe." Cal. Civil. Code § 51.9(a)(2).

1  Code § 52.4, upon which their gender violence claims are based, did not exist Stats
2  2002 Cal AB 1928, and provides no basis for recovery by them.

3        Cal. Civil Code § 51.9 also did not exist at the times of which TF and BS
4  complain Stats 1994 Cal SB 612.  While it did exist at the time KG saw Dr. Sutton in
5  1998, neither KG, nor any other plaintiff, alleges they were subjected to any sexual
6  advance or request upon which liability under Section 51.9 had to be based in 1998. See
7  Stats 1996 Cal SB 195.[3]

8        **C.**     **Plaintiffs' Second Amended Complaint, on its Face, Shows Common**
9  **Questions as to Whether the Hospital May Be Vicariously or Directly Liable for**
10  **Dr. Sutton's Conduct Do Not Predominate over Individual Questions – No**
11  **Discovery Is Necessary to Make This Determination.**

12        Further evidencing the lack of commonality, should any plaintiffs even succeed
13  in showing they were sexually assaulted or harassed by Dr. Sutton, is the fact that for
14  liability to be imposed on the hospital for Dr. Sutton's conduct, additional
15  determinations of fact unique to each plaintiff will be required.

16        Plaintiffs essentially assert three theories for holding the hospital liable for the
17  harm allegedly caused by Dr. Sutton's conduct: **(a)** vicarious liability under an actual or
18  ostensible agency theory; **(b)** failing to adequately screen Dr. Sutton's competency to
19  insure the adequacy of medical care rendered to patients at its facility; and **(c)** failing to
20  warn or protect plaintiffs as hospital patients, from the conduct of Dr. Sutton.

21        Whether the hospital may be vicariously liable for Dr. Sutton's conduct will
22  depend on whether he was an apparent or ostensible agent of the hospital.[4]  Before

---

[3] While Section 51.9 was amended in 1999, to "extend" liability to additional conduct, Stats 1999 Cal AB 519, as explained in defendant's Reply Memorandum, that amendment is not entitled to retroactive application.

[4] Private hospitals such as Huntington Memorial are expressly prohibited from employing physicians as part of the corporate ban on the practice of medicine. Cal. Bus. & Prof. Code § 2400; *Conrad v. Medical Bd.*, 48 Cal.App.4th 1038, 1042-1043 (1996); *Almont Ambulatory Surgery Ctr, LLC v. United Health Group*, 121 F.Supp.3d 950, 976-977 (C.D.Cal. 2015). Physicians providing services in a hospital generally do so, not as

6
**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE
PLAINTIFFS' SECOND AMENDED COMPLAINT**

recovery can be had such a theory, the plaintiff must show that they dealt with Dr. Sutton with a reasonable belief that he was an agent of the hospital, that such belief was generated by some act or neglect by the hospital, and that the plaintiff was not be negligent in holding that belief. *Markow v. Rosner*, 3 Cal.App.5th 1027, 1038 (2016). This inquiry will require an exploration of the state of mind of *each plaintiff* as to their understanding of the relationship between Dr. Sutton and the hospital and the foundational bases giving rise to each plaintiff's statue of mind.

Before it could be found that the hospital may be held directly liable to a plaintiff for Dr. Sutton's conduct either on a failure to screen or a failure to warn or protect theory, plaintiffs will be required to show that they were patients of the hospital at the time Dr. Sutton engaged in the alleged misconduct. The duty to screen the competency of a hospital's medical staff is owed to patients treated in its facility. *Elam v. College Park Hospital*, 132 Cal.App.3d 332, 346 (1982). The hospital also has no duty to take action to warn or protect another, absent a special relationship giving rise to such a duty. *Univ. of So. Cal. v. Superior Court,* 30 Cal.App.5th 429, 441 (2018). Plaintiffs, in this regard, are vague as to when such a duty may have arisen. From plaintiffs' Second Amended Complaint, it appears each plaintiff was seen by Dr. Sutton before they actually became patients of the hospital and therefore before a relationship giving rise to a duty owed by the hospital existed. (See SAC, ¶¶ 41-73.) Plaintiffs' class allegations also do not require any putative class member to even have been a patient at, or have

---

employees, but as independent contractors (typically emergency room physicians, pathologists and radiologists), see *Id.*; *Blank v. Palo Alto-Stanford Hospital Center,* 234 Cal.App.2d 377, 390 (1965), or pursuant to the granting of staff privileges. See Cal. Business & Professions Code § 805(a)(4); *Clarke v. Hoek,* 174 Cal.App.3d 208, 211, fn. 1 (1985). "Hospitals are required by law to have a medical staff association which oversees physicians who are given staff privileges to admit patients and practice medicine in the hospital. A hospital's medical staff is a separate legal entity, an unincorporated association, which is required to be self-governing and independently responsible from the hospital for its own duties and for policing its member physicians." *Hongsathavi v. Queen of Angels, etc., Med. Ctr.,* 62 Cal.App.4th 1123, 1130, fn. 2 (1998); see also Cal. Health and Safety Code § 32128; Cal. Bus. & Prof. Code § 805(a)(1)(B); Cal. Code Regs., tit. 22, § 70703 (a); *Arnett v. Dal Cielo,* 14 Cal.4th 4, 10 (1996).

7

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE PLAINTIFFS' SECOND AMENDED COMPLAINT**

any relationship with, Huntington Memorial. (SAC, ¶ 89.)

Even where a special relationship exists, the courts have repeatedly held that the existence of a duty still requires that the harm be reasonably foreseeable. Foreseeability, in this context, requires that the defendant have actual knowledge of the assaultive propensities of the assailant. *[Z. V. v. County of Riverside,](# ) 238 Cal.App.4th 889, 902 (2015)* (county owed no duty to protect minor sexually assaulted by County-employed social worker, where there was showing the County had knowledge of facts showing a propensity or disposition on the social worker's part to commit a sexually assault); *[J.L. v. Children's Institute, Inc.,](# ) 177 Cal.App.4th 388, 397-398 (2009)* (day care home operator owed no duty to protect child in its care from rape by operator's grandson, where there were no facts showing operator had actual knowledge of the grandson's assaultive tendencies or that he posed any risk of harm); *[Romero v. Superior Court,](# ) 89 Cal.App.4th 1068, 1080 (2001)* [an adult who assumed a special relationship with a minor by inviting him into his home will owe a duty to take reasonable measures to protect against an assault by another minor in the defendant's home when the defendant adult had actual knowledge of the offending minor's assaultive propensities].)

While the resolution of these foreseeability questions as to any plaintiff to whom the hospital may have owed a duty of care may not be unique to each plaintiff, the resolution will be dependent on the time in which each plaintiff came into contact with Dr. Sutton. This appears on the face of plaintiffs' Second Amended Complaint. Plaintiffs alleges facts showing that the hospital **by 1998 at the earliest**, might have had knowledge of some facts which might give rise to foreseeability of a propensity of Dr. Sutton to engage in misconduct. (SAC, ¶¶ 35-40.) Those facts do not show any knowledge which would give rise to foreseeability on the part of the hospital as of the time TF (1990) and BS (1991) were seen by Dr. Sutton years earlier. (SAC, ¶¶ 52, 61.) Those facts are also questionable as to whether the hospital had knowledge of facts giving rise to foreseeability by the time KG was seen by Dr. Sutton in 1998. (SAC, ¶ 41.)

**D. Plaintiffs' Second Amended Complaint, on its Face, Shows Individual Questions as Statute of Limitations Issues Will Be Substantial and Become a Significant Focus of the Litigation – No Discovery Is Necessary to Make This Determination.**

Statute of limitations questions will also require resolution of facts unique to each plaintiff. Plaintiffs' contention that the limitations period may be tolled by delayed discovery and fraudulent concealment (Pltf's Opp., p. 9:18-20), only emphasizes that truism. As is illustrated in the accompanying Reply Memorandum in support of defendant's Motion to Dismiss, whether any other claim may be tolled by the discovery rule or its "fraudulent concealment" subspecies, will necessarily involve a resolution of facts unique to each plaintiff and each potential class member.[5] District Courts in the Ninth Circuit have routinely found that a putative class representative's claims fail to meet the typicality requirement when they are subject to a statute of limitations defense that differs from other class members and would become a significant focus of the litigation, *Quezada v. Loan Ctr. Of Cal., Inc.*, 2009 U.S.Dist.LEXIS 122537, *24-25 (E.D.Cal. 2009), citing *Blackwell v. SkyWest Airlines, Inc.*, 245 F.R.D. 453, 462-63 (S.D.Cal. 2007); *Burton v. Mountain W. Farm Bureau Mut. Ins. Co.*, 214 F.R.D. 598, 609 (D. Mont. 2003), as is illustrated in the accompanying motion to dismiss submitted concurrently herewith, the statute of limitations not only creates a very real defense as to plaintiffs' claims, it raises numerous individual questions as to that defense as applied to the claims of putative class members.

///
///
///

---

[5]Defendant also explained in its Reply Memorandum in Support of its Motion to Dismiss, that plaintiffs have not plead any valid basis for fraudulent concealment which may toll any limitations period.

9

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE PLAINTIFFS' SECOND AMENDED COMPLAINT**

## II.

## CONCLUSION

It is abundantly clear on the face of the Second Amended Complaint, that individual questions will substantially predominate over any potential common questions which might exist, and that plaintiffs' class action suffers from empirical overbreadth, and a lack of commonality or typicality. The class allegations should be stricken.

DATED: June 24, 2019        TAYLOR DEMARCO LLP

By: /s/ N. Denise Taylor
N. DENISE TAYLOR
CHERIE L. LIEURANCE
Attorneys for Defendant,
PASADENA HOSPITAL
ASSOCIATION, LTD, dba
HUNTINGTON MEMORIAL
HOSPITAL

# CERTIFICATE OF SERVICE

I, Christine Chung, hereby certify that on this 24th day of June 2019, I electronically filed the following documents:

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE PLAINTIFFS' SECOND AMENDED COMPLAINT**

with the Clerk of the United States District Court for the Central District of California using the CM/ECF system which shall send electronic notification to all counsel of record. See attached Notice of Electronic Service for all parties served.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Los Angeles, California on June 24, 2019.

Christine Chung

# SERVICE LIST
Re: Jane Doe v. Pasadena Hospital Association, Ltd., et al.
Case No: 2:18-cv-08710-ODW-(MAAx)

| | |
|---|---|
| Jonathan D. Selbin<br>Annika K. Martin<br>LIEFF CABRASER HEIMANN AND BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111 | Attorneys for Plaintiffs<br>Jane Doe K.G., Jane Doe T.F., and Jane Doe B.S.<br><br>Tel: (415) 956-1000<br>Fax: (415) 956-1008<br>jselbin@lchb.com<br>akmartin@lchb.com |
| Joseph G. Sauder<br>SAUDER SCHELKOPF LLC<br>555 Lancaster Avenue<br>Berwyn, Pennsylvania 19312 | Attorneys for Plaintiffs<br>Jane Doe K.G., Jane Doe T.F., and Jane Doe B.S.<br><br>Tel: (888) 711-9975<br>Fax: (610) 421-1326<br>jgs@sstriallawyers.com |
| Marilyn Moriarty, Esq.<br>Kathleen Weadock, Esq.<br>Matthew Izu, Esq.<br>LEWIS BRISBOIS BISGAARD & SMITH LLP<br>701 B Street, Suite 1900<br>San Diego, California 92101 | Attorneys for Defendant,<br>The Medical Staff of Huntington Memorial Hospital<br><br>Tel: (619) 233-1006<br>Fax: (619) 233-8627<br>Marilyn.Moriarty@lewisbrisbois.com<br>Katherine.Weadock@lewisbrisbois.com<br>Matthew.Izu@lewisbrisbois.com |
| Yuk Law, Esq.<br>Zachary Schwake, Esq.<br>Law + Brandmeyer LLP<br>2 North Lake Avenue, Suite 820<br>Pasadena, CA 91101 | Attorneys for Defendant,<br>Patrick Sutton, M.D.<br><br>Tel: (626) 243-5500<br>Fax: (626) 243-4799<br>ylaw@lawbrandmeyer.com<br>zschwake@lawbrandmeyer.com |