# United States District Court
# Central District of California

| | |
|---|---|
| JANE DOE K.G. et al., | Case № 2:18-cv-08710-ODW (MAAx) |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS AND STRIKE SECOND AMENDED COMPLAINT [41] [45] [46] [55] [65]** |
| PASADENA HOSPITAL ASSOCIATION, LTD. et al., | |
| Defendants. | |

## I.  INTRODUCTION

Defendants the Pasadena Hospital Association, LTD. d/b/a Huntington Memorial Hospital ("Hospital"), Doctor Patrick Sutton ("Sutton"), and the Medical Staff of Huntington Memorial Hospital ("Medical Staff") (collectively "Defendants") move to dismiss and strike Plaintiffs' Second Amended Class Action Complaint ("Motions").  (ECF Nos. 41, 45, 46, 55, 65.)  For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motions.[1]

## II.  BACKGROUND

On January 24, 2019, Plaintiffs Jane Does K.G., T.F., B.S., and W.D. (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated,

---

[1] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

filed their Second Amended Class Action Complaint ("SAC") against Defendants. (SAC, ECF No. 34.) They brought this nationwide class action on behalf of individuals who were sexually abused, harassed, and molested by Sutton while they were patients in the care of Sutton, Hospital, and Medical Staff. (SAC ¶¶ 1, 89.) As part of their nationwide class action suit, Plaintiffs allege that there are thousands of class members. (SAC ¶ 93.)

Since 1989, Sutton served as an agent for Hospital and Medical Staff, working as an obstetrician-gynecologist at Hospital. (SAC ¶ 22.) Hospital is a California non-profit corporation. (SAC ¶ 23.) Medical Staff is a formal organization of all licensed physicians, dentists, and podiatrists who serve patients at Hospital and are also responsible for the quality of medical care that patients receive. (SAC ¶ 24.) Additionally, in collaboration with Hospital, Medical Staff sets and conducts procedures for physicians' appointment and privileges, the ongoing review and evaluation of practitioners' performance, and investigations and disciplinary actions. (SAC ¶ 24.)

Plaintiffs allege that Sutton exhibited a pattern of behavior and common course of conduct towards all victims. (SAC ¶ 7.) For instance, during Sutton's tenure at Hospital, he systematically violated the trust of vulnerable pregnant women who sought his care "by engaging in acts that include but are not limited to: inappropriate and not-medically-necessary sexualized touching during gynecological examinations and treatment, and lewd and threatening sexualized questions and comments to patients during examinations and outside the medical setting, in public places." (SAC ¶¶ 6, 33.) Further, Sutton misrepresented that his acts and conduct were for legitimate medical purposes and conformed to accepted medical practice. (SAC ¶ 78.)

Specifically, when Sutton examined Jane Doe K.G., he frequently made arousal-type sounds, stroked her legs, and groped her breasts. (SAC ¶¶ 43–49.) Sutton also told her that her husband must love her boobs, her husband must love rubbing his penis there, that he wanted to play with her boobs, and while performing a

vaginal exam he told her she was tight and that her husband must love it. (SAC ¶¶ 43–49.)

In his examinations with Jane Doe T.F., Sutton told her that she was "quite tight down there," that her breasts were "perky little things," that she should masturbate to relive migraine headaches, and to call him if she was able to achieve an orgasm through masturbation. (SAC ¶¶ 52–58.) Sutton also regularly stroked her thighs in a sexual manner and was "touch-feely" during these examinations. (SAC ¶¶ 52–58.)

When examining Jane Doe B.S., Sutton never wore gloves, told her that she had a "young, tight uterus," and placed his stethoscope on her nipple. (SAC ¶¶ 64–66.)

Jane Doe W.D. alleges that during her first vaginal examination, Sutton stuck his fingers in and out of her vagina to what she felt was an excessive amount, but because it was her first pregnancy, she was uncertain. (SAC ¶ 70.) After the examination, she called her boyfriend and told him that she felt violated. (SAC ¶ 71.) During subsequent vaginal examinations, Sutton continued to inappropriately and excessively touch Jane Doe W.D. (SAC ¶ 72.) Also, when Sutton conducted breast exams, she felt that his approach was abnormal because it felt like he was groping and sensually grabbing. (SAC ¶ 72.) Most recently, in June 2018, on Jane Doe W.D.'s last visit with Sutton, Sutton again excessively penetrated her vagina with his fingers, sensually groped her breasts, and made comments about her physical appearance. (SAC ¶ 75.)

Plaintiffs' further allege that Hospital and Medical Staff not only failed to take appropriate steps to protect Plaintiffs from Sutton's misconduct, worse, they actively and deliberately concealed Sutton's sexual abuse for years. (SAC ¶¶ 11, 34.) For example, Hospital and Medical Staff implemented various measures with the intent and effect of making Sutton's conduct harder to detect, including depressing patient's complaints. (SAC ¶¶ 82, 85.) Hospital and Medical Staff also had knowledge of at least five instances of sexual misconduct that resulted in lawsuits or complaints being brought to the Medical Board of California. (SAC ¶ 36.) These incidents resulted in

the Medical Board placing Sutton on probation for years at a time and ordering him to seek psychotherapy and attend classes on professional boundaries. (SAC ¶ 38.) Still, Hospital and Medical Board allowed Sutton to continue practicing medicine at the Huntington Hospital. (SAC ¶¶ 34, 40.)

Defendants now move to dismiss the SAC and strike Plaintiffs' class action claims. As Defendants' arguments overlap substantially, the Court addresses the Motions together. All briefing is complete, and the Court now considers the Parties' arguments.

## III. LEGAL STANDARD

"A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). To contest a plaintiff's showing of subject matter jurisdiction, a defendant may file a Federal Rule of Civil Procedure ("Rule") 12(b)(1) motion, which may be either facial or factual in nature. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). A facial 12(b)(1) motion involves an inquiry limited to the allegations in the complaint, whereas a factual 12(b)(1) motion permits the court to look beyond the complaint to extrinsic evidence. *Id*. When a defendant makes a facial challenge, all material allegations in the complaint are presumed true, and the court must determine whether lack of federal jurisdiction appears from the face of the complaint itself. *See Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp*, 594 F.2d 730, 733 (9th Cir. 1979). In contrast, when a defendant makes a factual challenge, the court determines whether it has jurisdiction by resolving factual disputes as to its existence; in doing so the court need not presume the truth of plaintiff's allegations. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). "To survive a motion to dismiss . . . under Rule 12(b)(6), a complaint generally must satisfy only the

minimal notice pleading requirements of Rule 8(a)(2)"—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); *see also* Fed. R. Civ. P. 8(a)(2). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555).

Whether a complaint satisfies the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable to [the plaintiff]." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Under Rule 12(f), the court may strike any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003); *see also Sapiro v. Encompass Ins.*, 221 F.R.D. 513, 518 (N.D. Cal. 2004) ("Courts have long disfavored Rule 12(f) motions, granting them only when necessary to discourage parties from making completely tendentious or spurious

allegations."). Accordingly, the decision whether to grant a motion to strike is made at the Court's discretion. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds in Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)).

## IV. DISCUSSION

Defendants move to dismiss Plaintiffs' SAC by throwing spaghetti at the wall and seeing what sticks; they argue: (1) Plaintiffs' have not alleged facts, facially or factually, showing that the Court can exercise jurisdiction under the Class Action Fairness Act ("CAFA"); (2) Plaintiffs' claims are time-barred because no tolling theory applies; (3) Plaintiffs failed to adequately plead each of their causes of action; and (4) Plaintiffs failed to obtain leave from the Court to seek punitive damages. (*See* Mots. to Dismiss.) Additionally, Defendants move to strike Plaintiffs' class action allegations by arguing that Plaintiffs lack standing and that individual questions predominate over the class claims. (*See* Mots. to Strike.)

### A. Jurisdiction Under CAFA

Defendants assert two arguments why the Court lacks jurisdiction under CAFA: first, Plaintiffs fail to show that the class is at least 100 persons and, second, the home-state controversy and local controversy exceptions impede jurisdiction. (Hospital's Mot. to Dismiss ("Hospital's Mot.") 22, ECF No. 45; Sutton's Mot. to Dismiss ("Sutton's Mot.") 8–9, ECF No. 65.)

CAFA grants subject matter jurisdiction to federal district courts over class actions in which: (1) any member of the plaintiff class is a citizen of a state different from the state of citizenship of any defendant, (2) the aggregate amount in controversy exceeds $5 million, and (3) the proposed plaintiff class contains at least 100 members. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020–21 (9th Cir. 2007). The statute also includes the local and home-state controversy exceptions, which require a federal district court to decline jurisdiction even if the above requirements are met. *King v. Great Am. Chicken Corp, Inc.*, 903 F.3d 875, 877–78 (9th Cir. 2018). These two exceptions require the party challenging jurisdiction to prove "that greater than two-

thirds of proposed class members 'are citizens of the State in which the action was originally filed.'" *Id*. (citing 28 U.S.C. §§ 1332(d)(4)(A), (B)).

### 1. *Aggregate Class Size*

Plaintiffs sufficiently plead a prima facie case to establish diversity jurisdiction under CAFA. Specifically, Plaintiffs allege that Dr. Sutton's predatory behavior goes back decades, and thus, the class size is plausibly at least 100 members. (SAC ¶¶ 7–8, 13, 78–99.) Accordingly, Plaintiffs have met their burden at the pleading stage. *Serrano*, 478 F.3d 1018, 1021. Defendants assert, even if Plaintiffs have sufficiently alleged that the class size is at least 100 members, Plaintiffs' allegations are factually false. (Hospital's Mot. 21–22; Hospital's Reply 9, ECF No. 70.) However, Defendants cite no evidence in the record to support its factual attack against the class size, and thus this argument also fails. *See Safe Air for Everyone*, 373 F.3d at 1039 (requiring evidence to resolve factual attacks on jurisdiction). Accordingly, the Court denies Defendants' motions to dismiss on this basis.

### 2. *Exceptions to CAFA Jurisdiction*

Defendants assert that the local controversy and home-state controversy exceptions apply to defeat CAFA jurisdiction. (Hospital's Reply 10.) In opposition, Plaintiffs assert that Defendants, not Plaintiffs, bear the burden to show that the exceptions apply. (Pls.' Opp'n to Hospital's Mot. ("Opp'n Hospital") 6–7, ECF No. 61.)

The local controversy and home-state controversy exceptions require the party opposing CAFA jurisdiction to prove "that greater than two-thirds of proposed class members are citizens of the State in which the action was originally filed." *King*, 903 F.3d at 877–78 (internal quotation marks omitted). Since the individual factors of a party's citizenship are essentially factual, the party opposing CAFA jurisdiction must then establish the required facts by a preponderance of evidence. *See id.* at 878.

Here, neither exception applies. Defendants mistakenly argue that "[i]n determining whether the local controversy exception applies, the court focuses on the

allegations of the complaint." (Hospital's Reply 10.) This is true when the disputed issue is whether the plaintiff seeks relief from a defendant whose conduct forms a significant basis for the claims asserted, pursuant to 28 U.S.C. §§ 1332(d)(4)(A)(i)(II)(aa) & (bb). *See Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010, 1015 (9th Cir. 2011). However, Defendants do not dispute these issues here. Instead, Defendants challenge whether greater than two-thirds of the proposed class members are citizens of California. Accordingly, Defendants must support that assertion with a preponderance of evidence. *King*, 903 F.3d at 877–78. Again, Defendants have not proffered evidence to establish such an assertion. Therefore, Defendants have not shown that either the local controversy or home-state controversy exceptions apply. Thus, the Court denies Defendants' motion to dismiss Plaintiffs' SAC on this basis.

**B. Statute of Limitations and Tolling**

In the alternative, Defendants assert that all of Plaintiff Jane Doe K.G.'s, T.F.'s, and B.S.'s claims are time-barred and no tolling theory applies. (*See* Hospital's Mot.; Medical Staff's Mot. to Dismiss ("Medical Staff's Mot."), ECF No. 55.) Plaintiffs argue they did not discover until 2018 that Sutton's conduct constituted sexual assault, sexual battery, and sexual harassment and, thus, Plaintiffs could not have asserted negligence claims against Hospital or Medical Staff for their role in permitting it. Nor could they have brought their gross negligence claim against all Defendants, as it is premised on the egregious misconduct giving rise to the assault and battery claims. (*See* Opp'n Hospital; Pls.' Opp'n to Medical Staff's Mot. ("Opp'n Medical Staff") ECF No. 62.)

Generally, a statute of limitations does not begin to run until a cause of action accrues, which occurs at "the time when the cause of action is complete with all of its elements." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005). The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Id*. at 807. To benefit from the discovery

rule, a plaintiff "must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 808. "Resolution of the statute of limitations issue is normally a question of fact." *Id.* at 810.

Here, Plaintiffs assert that the discovery rule is applicable for two reasons. First, they only became aware of Sutton's misconduct in October 2018, after the Los Angeles Times published a story revealing it. (SAC ¶ 88.) Second, their failure to discover was reasonable and not the result of failure to investigate because Defendants actively concealed and misrepresented that Sutton's conduct conformed to accepted medical practices or done for legitimate medical purposes. (SAC ¶¶ 11, 81–82.) The Court finds that Plaintiffs have sufficiently alleged both of the discovery rule prongs. *See Fox*, 35 Cal. 4th at 808. Nevertheless, Defendants assert that the facts, as alleged in the SAC, impute an awareness of wrongfulness, and therefore, the delayed discovery rule is inapplicable. (Hospital's Mot. 27–28.) At this point, the issue boils down to whether Plaintiffs' allegations demonstrate they were aware or had reason to suspect Sutton of wrongdoing. For the reasons that follow, the Court finds that the discovery rule tolls Plaintiffs' sexual assault, sexual battery, and negligence claims.

"[A]s to accrual, once properly pleaded, belated discovery is a question of fact." *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1320 (2007) (internal quotation marks omitted). "However, whenever reasonable minds can draw only one conclusion from the evidence, the question becomes one of law." *Id*. Therefore, "the issue is whether the trial court could determine as a matter of law that failure to discover was due to failure to investigate or to act without diligence." *Id*. To determine when the limitations period begins to run under the discovery rule, courts "look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." *Fox*, 35 Cal. 4th at 807. Accordingly, "[a] plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for'" its "'generic' elements of wrongdoing, causation, and harm." *Id*.

### 1. Sexual Harassment Claim

Regarding Plaintiff Jane Doe K.G.'s, T.F.'s, and B.S.'s sexual harassment claim, the Court finds the discovery rule does not toll the statute of limitations because the alleged facts confirm that Plaintiffs should have suspected wrongdoing.

Sexual harassment transpires when a "defendant has made sexual advances, solicitations, [or] sexual requests . . . that were unwelcome and pervasive or severe." Cal. Civ. Code § 51.9(a)(2). Here, Jane Doe K.G. alleges that Sutton frequently made "arousal-type" sounds, told her that her vagina was tight, that he wanted to play with her breasts, and that her "husband must love to rub his penis there." (SAC ¶¶ 43, 48–49.) Sutton made similar verbal comments to Jane Does T.F. and B.S. (*See* SAC ¶¶ 54–55, 65.) From these allegations, Plaintiffs had reason to suspect that Sutton had committed verbal sexual harassment. *E-Fab, Inc.*, 153 Cal. App. 4th at 1320 ("whenever reasonable minds can draw only one conclusion from the evidence, the question becomes one of law."). Therefore, Plaintiffs' argument that they could not have discovered Sutton's comments constituted sexual harassment is implausible and the discovery rule does not toll their sexual harassment claim.[2] Accordingly, Plaintiff Jane Doe K.G.'s, T.F.'s, and B.S.'s claim of sexual harassment is **DISMISSED with prejudice**.

### 2. Sexual Assault & Sexual Battery Claims

A sexual battery is an action committed "with the intent to cause a harmful or offensive contact with an intimate part of another, and a sexually offensive contact with that person directly or indirectly results." Cal. Civ. Code § 1708.5(a)(1). Sexual assault is an action committed to cause an imminent apprehension of a sexual battery. *Id.* § 1708.5(a)(3).

---

[2] As the Court determines that the discovery rule tolls Plaintiffs' claims, the Court determines that the fraudulent concealment doctrine does not toll the sexual harassment claim for the same reason the discovery rule does not toll this claim—the allegations demonstrate they knew it was harassment and thus the claim was not concealed.

Defendants assert that Plaintiffs cannot reasonably claim delayed discovery because Plaintiffs knew of Sutton's sexual assault and sexual battery when it occurred, as demonstrated by Plaintiffs' allegations of sexual touching and inappropriate examinations. (Hospital's Mot. 24–30; Sutton's Mot. 11–13; Medical Staff's Mot. 12–14.) For example, touching their legs in a sexual manner, conducting unexpected vaginal exams, and unnecessary breasts exams. (*See* SAC ¶¶ 43–49, 52–58, 64–67.) In opposition, Plaintiffs assert that Sutton's position and authority as a physician, and the circumstances surrounding the alleged conduct, give reason for their inability for making an earlier discovery. (Opp'n Hospital 10.) Sutton, as Plaintiffs' Doctor, misrepresented that his actions were done for legitimate medical purposes that conformed to accepted medical practices. (SAC ¶¶ 78–81.) Therefore, Plaintiffs' argue, their failure to discover was reasonable and not the result of failure to investigate.

The Court is unconvinced that Plaintiffs' allegations impute an awareness of wrongfulness with regards to harmful or offensive contact with an intimate part. Foremost, Plaintiffs' assert that they first became aware of Sutton's misconduct in October 2018, when the Los Angeles Times published a story describing Sutton's sexual misconduct. (SAC ¶ 88.) Second, because Sutton misrepresented to Plaintiffs that his "acts were for a legitimate medical purpose and/or conformed to accepted medical practice," their failure to discover was reasonable. Cal. Civ. Proc. Code § 340.16(a)(2) (providing for applicability of the discovery rule in cases involving sexual assault). Hence, the Court finds that reasonable minds could draw more than one conclusion from the allegations, and thus, the issue of belated discovery is a question of fact. *E-Fab, Inc.*, 153 Cal. App. 4th at 1320. Accordingly, the Court finds that the discovery rule tolls the statutes of limitations for Plaintiffs' sexual assault and sexual battery claims.

Therefore, the Court **DENIES** dismissal of Plaintiff Jane Doe K.G.'s, T.F.'s, and B.S.'s third and fourth causes of actions on this basis.

### 3. Negligence Claims

Hospital moves to dismiss each of Plaintiff's five negligence claims on the basis that they are barred by statute of limitations. (Hospital's Mot. 34–35.) However, the Court has already determined that Jane Does K.G.'s, T.F.'s, and B.S.'s sexual assault and sexual battery claims are tolled pursuant to the discovery rule. Analogously, Plaintiffs' negligence claims are also tolled pursuant to the discovery rule and Hospital's request to dismiss these claims as time-barred is **DENIED**.

## C. Sexual Assault, Sexual Battery, and Negligence Claims

Defendants next argue Plaintiffs fail to state a claim for any causes of action. First, Defendants contend that Plaintiffs have insufficiently pleaded their sexual assault and battery claims. (*See* Hospital's Mot. 23–24; Medical Staff's Mot. 16–17; Sutton's Mot. 15–16.) However, Plaintiffs allege that Sutton intentionally made offensive contact by touching their legs in a sexual manner, conducting unexpected vaginal exams, unnecessary breasts exams, and excessive vaginal fingering. (SAC ¶¶ 41–77.) Further, Plaintiffs assert that, even if they consented to gynecological examinations, their consent did not extend to Sutton's inappropriate and medically unnecessary conduct. (Opp'n to Sutton's Mot. ("Opp'n Sutton") 24–25 n.7, ECF No. 68.) Accordingly, these allegations, which must be taken as true and construed in a light most favorable to Plaintiff at this stage, are sufficient to state a claim for sexual assault and battery. *See Lee*, 250 F.3d at 688.

Second, Sutton asserts that Plaintiffs' gross negligence claim fails because Plaintiffs' have not adequately alleged actionable sexual assault, harassment, or abuse. (Sutton's Mot. 15–16.) However, the Court finds that Plaintiffs sufficiently plead claims of sexual assault and sexual battery, so Sutton's request to dismiss Plaintiffs' gross negligence claim is also **DENIED**.

Third, Medical Staff asserts that each of Plaintiffs' negligence claims fail. (Medical Staff's Mot. 17–18.) Although unclear, Medical Staff appears to make four arguments: (1) Medical Staff owes no fiduciary duty to Plaintiffs; (2) Plaintiffs have

insufficiently alleged facts to establish a fiduciary relationship between the patients and the Medical Staff; (3) California Evidence Code section 1157 precludes the formation of a fiduciary duty between patients and a medical staff; and (4) Medical Staff does not have a duty of care to protect against intentional torts. (Medical Staff's Mot. 17–18.) The Court finds each argument unpersuasive.

Foremost, as to its first three arguments, Medical Staff confuses a "duty of care" with "fiduciary duty" and "fiduciary relationship." Plaintiffs' negligence claims require the existence of a legal duty to use care, not the existence of a fiduciary duty or fiduciary relationship. *See Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 306 (1995) (finding that Hospitals owe a duty of due care to their patient). Accordingly, Medical Staff's arguments that are predicated upon Plaintiffs either establishing a fiduciary duty or fiduciary relationship fail because such a duty or relationship is unnecessary to Plaintiffs' negligence claims. *See id.*

Medical Staff also appears to argue that its duty to protect is limited only to professional negligence and does not otherwise owe a duty of care to protect patients against intentional torts. (Medical Staff's Mot. 18.) Not so. Rather, tortious actions undertaken for a non-medical purpose, for instance, the physician's sexual gratification, are not professional negligence and a hospital can be held liable. *Lisa M.*, 12 Cal. 4th at 306 (stating that the "Hospital's duty of due care to its patient obliged it to take all measures dictated by ordinary prudence to protect against even such unusual sources of injury," including sexual assault committed by a staff member). Therefore, Medical Staff's argument fails.

Accordingly, the Court **DENIES** dismissal of Plaintiffs' negligence claims.

## D. Gender Violence Claim

Next, Defendants attack Plaintiffs' claim for Gender Violence under California Civil Code section 52.4. (Hospital's Mot. 31–32; Medical Staff's Mot. 19–20; Sutton's Mot. 13–14.) Defendants offer three arguments: first, at the time of Sutton's alleged misconduct towards Jane Does K.G., T.F., and B.S., section 52.4 did not exist;

second, section 52.4 does not provide a basis for which Hospital and Medical Staff may be held liable; and third, Plaintiffs do not plead sufficient facts to state a claim.

A claim for gender violence may be established either of two ways. First, the act or acts constitute a criminal offense under state law where the defendant used or threatened to use physical force against the plaintiff at least in part based on the gender of the victim. Cal. Civ. Code § 52.4(c)(1). Second, the defendant committed a "physical intrusion or physical invasion of a sexual nature under coercive conditions," whether or not those acts resulted in criminal charges. Id. § 52.4(c)(2); *Bolton v. City of Berkeley*, No. 19-CV-05212-WHO, 2019 WL 6250927, at *7 (N.D. Cal. Nov. 22, 2019).

### 1.    *Plaintiffs Jane Does K.G.'s, T.F.'s, and B.S.'s — Gender Violence Claim*

First, Defendants assert that Jane Does K.G., T.F., and B.S. may not seek relief pursuant to section 52.4 because the statute did not exist during the time of Sutton's misconduct. (Hospital's Mot. 31; Medical Staff's Mot. 19; Sutton's Mot. 13.) Plaintiffs provide no meaningful opposition to Defendants' argument. (*See* Opp'n Hospital 16–17.) The California Supreme Court has held that "a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature or the voters must have intended a retroactive application." *Evangelatos v. Super. Ct.*, 44 Cal. 3d 1188, 1209 (1988). Here, the statute and legislative history is silent as to section 52.4's retroactivity. *See* Cal. Civ. Code § 52.4(c)(1); Cal. Assemb., Bill Analysis A.B. 1928 (Cal. June 29, 2002). Accordingly, the Court does not find that section 52.4 was intended to apply retroactively and, consequently, Jane Does K.G.'s, T.F.'s, and B.S.'s gender violence claims are **DISMISSED with prejudice**.

### 2.    *Plaintiff Jane Doe W.D. — Gender Violence Claim*

First, Sutton and Medical Staff argue that Jane Doe W.D.'s section 52.4 claim fails because (1) she does not allege physical force, (2) the conduct alleged can be plausibly explained as medically-necessary touching, and (3) Jane Doe W.D. fails to allege facts establishing threat or coercion. (Sutton's Mot. 13–14; Medical Staff's

Mot. 20.)  Jane Doe W.D. counters that she need not allege physical force because she instead alleges "a physical intrusion or physical invasion," and she has alleged sufficient facts to establish threat and coercion.  (Opp'n Sutton 20–21; Opp'n Medical Staff 17.)

Section 52.4 requires a plaintiff to allege either physical force or a physical intrusion or invasion under coercive conditions.  *Bolton*, 2019 WL 6250927, at *7. Jane Doe W.D. alleges that Sutton always insisted on performing breasts exams, and that during vaginal and breasts exams, Sutton would excessively stick his fingers in and out of her vagina and sensually grope her breasts.  (SAC ¶¶ 70–75.)  Although occurring during a medical examination, Jane Doe W.D. adequately alleges that Sutton physically intruded and invaded her body.  Cal. Civ. Code § 52.4; *see Doe v. Starbucks, Inc*., No. SACV 08-0582 AG CWX, 2009 WL 5183773, at *17 (C.D. Cal. Dec. 18, 2009) (acquiescence to intrusion and invasion does not bar a section 52.4 claim when it is a result of manipulation and coercion).

Moreover, Jane Doe W.D. sufficiently establishes coercion by alleging Sutton's position as a medical doctor, his apparent authority, and the misrepresentation that these examinations conformed to accepted medical practice.  *See generally id.* (a jury can find that coercive conditions existed when the plaintiff acquiesced to sex only after the defendant, her supervisor, persistently asked her out).  Accordingly, Jane Doe W.D. sufficiently alleges a section 52.4 claim and Defendants' motions to dismiss K.G.'s gender violence claim on this basis are **DENIED**.

Next, Hospital and Medical Staff assert that they cannot be held vicariously liable for Sutton's conduct because Section 52.4 exempts employers from liability for the acts of their employees.  (Hospital's Mot. 31–32; Medical Staff's Mot. 19–20.) Plaintiffs appear to concede this point, arguing only that Hospital and Medical Staff should be held liable for "reasons independent" of their status as employers pursuant to their "statutory and fiduciary duties to patients."  (*See* Opp'n Hospital 16–17; Opp'n Medical Staff 18–19.)

Section 52.4(e) of the California Civil Code exempts employers from liability on a claim of gender violence for the acts of their employees. Cal. Civ. Code § 52.4(e); *see Jones v. Kern High Sch. Dist.*, No. CV-F-07-1628 OWW/TAG, 2008 WL 3850802, at *29 (E.D. Cal. Aug. 14, 2008) (granting dismissal of Section 52.4 claim "[g]iven the absence of any authority supporting the cause of action and the proscription against vicarious liability"). Accordingly, Hospital and Medical Staff cannot be held vicariously liable for Sutton's misconduct under section 52.4 and Plaintiffs allege no facts to establish that Hospital or Medical Staff personally committed an act of gender violence. *Greenwald v. Bohemian Club, Inc.*, No. C 07-05261 WHA, 2008 WL 2331947, at *7 (N.D. Cal. June 4, 2008) (holding that civil liability is not established "unless the employer personally committed an act of gender violence"). Therefore, Jane Doe W.D.'s section 52.4 claim against Hospital and Medical Staff is **DISMISSED with prejudice**.

**E.     Jane Doe W.D.'s Sexual Harassment Claim**

Medical Staff and Sutton next challenge Jane Doe W.D.'s sexual harassment claim, arguing it fails for two reasons: first, Jane Doe W.D. fails to adequately allege that Sutton's misconduct was severe and pervasive; and, second, Jane Doe W.D. fails to establish that Sutton was an agent or employee of the Medical Staff, so no basis for vicarious liability against Medical Staff exists. (*See* Medical Staff's Mot. 19; Sutton's Reply 9, ECF No. 69.)

Sexual harassment is defined as where "[t]he defendant has made sexual advances, solicitations, sexual requests, demands for sexual compliance by the plaintiff, or engaged in other verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on gender, that were unwelcome and pervasive or severe." Cal. Civ. Code § 51.9(a)(2). Regarding Jane Doe W.D.'s sexual harassment claim against Sutton, she alleges that during vaginal and breasts exams, Sutton would always stick his fingers in and out of her vagina excessively, sensually grope her breasts, and make comments about her physical appearance. (SAC ¶¶ 70–75.) Such

allegations are sufficient to allege pervasive and severe conduct. *See* Cal. Civ. Code § 51.9(a)(2); *C.R.*, 169 Cal. App. 4th at 1099–1100, 1106 (allegations of defendant touching breasts and vaginal areas were sufficient to constitute sexual harassment). Accordingly, Plaintiff has sufficiently alleged sexual harassment against Sutton.

Turning to W.D.'s sexual harassment claim against Medical Staff, section 51.9 also requires as an element of potential liability, "a business, service, or professional relationship between the plaintiff and defendant." *C.R. v. Tenet Healthcare Corp.*, 169 Cal. App. 4th 1094, 1106 (2009), *as modified on denial of reh'g* (Feb. 3, 2009). For instance, providing health care services or medical treatment to patients constitutes a professional relationship. *Id*. at 1106–07. Accordingly, an "entity" providing health care services that hires or supervises a physician to care for patients is a service that falls within the ambit of a profession. *See id*. Consequently, a court may determine that a professional relationship exists between an entity providing such services and a patient, and therefore, liability may be imposed upon the entity pursuant to section 51.9. *Id.* at 1107, 1110.

Here, as in *C.R.*, Jane Doe W.D. alleges that Sutton was an authorized agent of Medical Staff. (SAC ¶¶ 22, 24, 34, 38.) Moreover, she alleges that Medical Staff served patients and was responsible for physicians' appointments, ongoing review of practitioners' performance, and investigations and disciplinary actions. (SAC ¶ 24.) This includes responsibility for reviewing and supervising Sutton. Therefore, as in *C.R.*, the Court finds that a professional relationship exists between Medical Staff and Jane Doe W.D., and therefore Medical Staff falls within the scope of section 51.9 and may be held liable for Sutton's misconduct. *See C.R.*, 169 Cal. App. 4th at 1107. Accordingly, Defendants' request to dismiss Jane Doe W.D.'s sexual harassment claim is **DENIED**.

## F.     Punitive Damage Claims

Hospital and Medical Staff assert that this Court must strike Plaintiffs' claims for punitive and/or exemplary damages because Plaintiffs have failed to comply with

section 425.13 of the California Code of Civil Procedure. (Hospital's Mot. 35–40; (Medical Staff's Mot. to Strike ("MS's Strike") 18–22, ECF No. 41.) Plaintiffs counter that section 425.13 is purely procedural and inapplicable in federal courts. (Opp'n Hospital 20–25; Pls.' Opp'n to MS's Strike ("Opp'n MS Strike") 13–19, ECF No. 63.)

Federal district courts within California "are split as to whether § 425.13 is a procedural or substantive requirement and, consequently, whether it applies in federal courts." *Kessel v. New Hope Cancer & Research Inst.*, No. EDCV 18-240 JGB (SPx), 2018 WL 5869669, at *3 (C.D. Cal. June 19, 2018) (collecting cases). However, the Central District takes the posture that section 425.13's pleading requirements are procedural, and therefore do not apply in federal court. *See id.* (finding section 425.13's pleading requirements procedural); *see, e.g.*, *Ramirez v. Providence Saint John's Health Ctr. Providence Health & Servs.*, No. CV 18-01984-AB (DFMx), 2018 WL 6174711, at *5–6, n.4 (C.D. Cal. Sept. 18, 2018) (unpersuaded that section 425.13 is substantive). Accordingly, a plaintiff is not required to comply with section 425.13 in federal court. *See Kessel*, 2018 WL 5869669, at *3. Given the Central District's posture, the Court finds that Plaintiffs are not required to comply with section 425.13, and thus, the Court **DENIES** Defendants' request to strike Plaintiffs' claims for punitive and/or exemplary damages.

## G.    Class Action Claims[3]

Pursuant to Rule 12(f), Medical Staff and Hospital also move to strike Plaintiffs' class claims. (MS's Strike; Hospital's Mot. to Strike ("Hospital's Strike"), ECF No. 46.) Defendants argue: (1) Plaintiffs' proposed class suffers from "empirical overbreadth" (Hospital's Strike 16); (2) individual questions predominate (MS's Strike 14–15; Hospital's Strike 18–20); and (3) a class action is not superior to other

---

[3] As the Court has determined it has jurisdiction over this suit under CAFA and because Defendants make again the same argument to challenge Plaintiffs' class action claims, accordingly, the Court need not address Defendants' standing arguments again.

available methods, due to manageability issues (MS's Strike 16–17). In opposition, Plaintiffs raise several arguments, most importantly, that the motions to strike are premature. (Opp'n MS Strike; Pls.' Opp'n to Hospital's Strike ("Opp'n Hospital Strike"), ECF No. 60.)

"Striking class allegations prior to a formal certification motion is generally disfavored due to the lack of a developed factual record." *Pepka v. Kohl's Dep't Stores, Inc.*, No. CV-16-4293-MWF (FFMx), 2016 WL 8919460, at *1 (C.D. Cal. Dec. 21, 2016); *see also In re NVIDIA GPU Litig.*, No. C 08-04312-JW, 2009 WL 4020104, at *13 (N.D. Cal. Nov. 19, 2009) ("A determination of the ascertainability and manageability of the putative class in light of the class allegations is best addressed at the class certification stage of the litigation."). While some courts strike class allegations where it is abundantly clear that the class mechanism will not work, it is the exception, not the rule. *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245–46 (C.D. Cal. 2011) (collecting cases) ("While defendant cites several cases for the proposition that class allegations can be stricken at the pleadings stage, it is in fact rare to do so in advance of a motion for class certification."). As this Court previously acknowledged, "[c]ourts are hesitant to strike class allegations before the parties have had an opportunity to go through the class certification process." *Portillo v. ICON Health & Fitness, Inc.*, No. 2:19-cv-01428-ODW (PJWx), 2019 WL 6840759, at *6 (C.D. Cal. Dec. 16, 2019). Accordingly, "[b]efore a motion to strike is granted, the court must be convinced there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005).

Here, given the early stage of the proceedings and the numerous questions of law disputes, it is premature to determine whether the matter should proceed as a class action. The Court foresees problems at the class certification stage in light of potential questions regarding whether equitable tolling is applicable for class members

with claims beyond the statute of limitations period. However, the Court declines to address those issues now, without the benefit of discovery and briefing. *See Cholakyan*, 796 F. Supp. 2d at 1245–46. Moreover, even if there are issues with the proposed class, at this stage it cannot be said that there are no circumstances in which the proposed class could succeed. *See In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615–16 (N.D. Cal. 2007) (declining to strike class allegations at the pleadings stage as "plaintiffs should at least be given the opportunity to make the case for certification based on appropriate discovery.")

At this early stage, the Court finds Defendants' motions to strike class allegations premature and the issues raised more properly decided on a motion for class certification after the parties have had an opportunity to conduct discovery, develop a record, and brief the issues. Accordingly, the Court **DENIES** Defendants' Motions to Strike.

**H.    Leave to Amend**

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). The Court has dismissed several of Plaintiffs' claims with prejudice, either because the claims are time-barred or because the Court finds there are simply no additional facts consistent with the SAC that Plaintiffs may allege to cure the deficiency. *Lopez*, 203 F.3d at 1127. Accordingly, leave to amend is **DENIED** as to those claims so indicated above.

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motions to Dismiss Plaintiffs' Second Amended Class Action Complaint (ECF Nos. 45, 55, 65.) and **DENIES** without prejudice, Defendants'

Motion to Strike Plaintiffs' class action claims (ECF Nos. 41, 46.)  Specifically, Jane Does K.G.'s, T.F.'s, and B.S.'s gender violence claim is **DISMISSED** with prejudice; Jane Doe W.D.'s gender violence claim against Hospital and Medical Staff is **DISMISSED** with prejudice; and Jane Does K.G.'s, T.F.'s, and B.S.'s sexual harassment claim is **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

March 16, 2020

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**